**Dennis J. BRITT, Trustee of Frank James Damson, Bankrupt, Appellant,**

v.

**Alice J. DAMSON, Appellee.**

**No. 18973.**

United States Court of Appeals Ninth Circuit.

July 7, 1964.

Rehearing Denied Aug. 17, 1964.

George S. Lundin, Geraghty, Lundin & Geraghty, Seattle, Wash., for appellant.

Jack M. Whitmore and William J. Powers, Whitmore, Vinton, Powers & Manion, Seattle, Wash., for appellee.

Before CHAMBERS, HAMLEY and HAMLIN, Circuit Judges.

HAMLEY, Circuit Judge.

Dennis J. Britt, trustee of Frank James Damson, bankrupt, brought this suit against the bankrupt's former wife, Alice J. Damson, to obtain title and possession of community property which had been awarded to her in the divorce proceedings. The trustee asked, in the alternative, that such property be declared the subject of an equitable lien in favor of the trustee. Cross motions for summary judgment were made. Summary judgment was entered for Mrs. Damson, and the trustee appeals.

898

Damson and his wife, residents of the State of Washington, were married on September 7, 1947, and separated on December 28, 1959. On January 10, 1960, she commenced a separate maintenance action against him and, in March, 1961, sued him for divorce. A decree of divorce was entered on June 22, 1961.

During the course of their marriage the Damsons developed a successful and prosperous construction business, leading to the accumulation of substantial community property under the laws of the State of Washington. All of this property was awarded to one or the other of them under the terms of the decree of divorce. Mr. Damson was required to assume and pay all of the community obligations.

All of the property awarded to Mrs. Damson had been acquired during the marriage and prior to the separation. Under the terms of the decree, Damson was required to, and did, execute endorsements, deeds and other documents, and deliver to Mrs. Damson certain documents and instruments to effectuate the award to her. By July 26, 1961, these requirements had been met.

All accounts receivable of the construction business, all of the tools, equipment, supplies and physical assets of that business, and all bank accounts standing in the name of Damson, along with certain other items of property, were awarded to him. Several of the construction projects which had been started during the marriage were in progress during the time the Damsons were separated.

On November 20, 1961, at a time when Damson was unmarried, he filed a petition in bankruptcy and was, on that day, adjudicated a bankrupt. In the schedules annexed to his petition in bankruptcy, Damson listed the accounts receivable from these construction projects, and listed the creditors of the construction business. Dennis J. Britt was thereafter appointed trustee.

In seeking title to and possession of, or at least an equitable lien upon, the community property which had been award-ed to Mrs. Damson in the divorce proceedings, the trustee advances three theories, any one of which, if sustainable in fact and law would have entitled him to the requested relief. One of these theories is predicated upon section 70, sub. c of the Bankruptcy Act (Act), 11 U.S.C. § 110, sub. c (1958), vesting in the trustee all the rights, remedies and powers of a creditor then holding a lien upon the property in question. A second theory is that the award of community property was a fraudulent or voidable transfer within the meaning of section 70, sub. e(1) of the Act, 11 U.S.C., § 110, sub. e(1) (1958). The third theory is that the award was fraudulent under section 67, sub. d(2) (a) or (b) of the Act, 11 U.S.C. § 107, sub. d(2) (a) or (b) (1958).

The trial court granted summary judgment for Mrs. Damson on a single ground which, in the view of the court, required rejection of each of these theories. That ground is succinctly stated in the following excerpt from the oral decision of the district court:

"When Frank J. Damson filed his voluntary petition as a single man, the marriage had been terminated. Damson could no longer act as manager or agent of the marital community and had no power to take the property or debts of the former community into bankruptcy with him had he intended to do so, which is by no means clear. Nor did he have the power to subject the separate property of his former wife to the bankruptcy proceedings. It follows that the bankrupt's trustee does not represent the interests of creditors of the former community as community creditors whatever their status may be as creditors of Damson individually. The rights and remedies asserted by the Trustee are those of creditors of the former community."

We do not believe that the case may be disposed of on this ground. Under the Bankruptcy Act, as this court said in the recent case of Schultz v. Mas-

trangelo, 9 Cir., 333 F.2d 278, n. 3, the petition in bankruptcy is not a transfer but a pleading, and the trustee is vested with the bankrupt's title not by act of the parties but "by operation of law." Section 70, sub. a of the Act, 11 U.S.C. § 110; Royal Indem. Co. v. American Bond & Mortgage Co., 289 U.S. 165, 171, 53 S. Ct. 551, 77 L.Ed. 1100.

The question presented is not what authority the debtor had to represent the marital community at the time the bankruptcy petition was filed, or his then intent or power to "take" into bankruptcy what had formerly been community property. The only question is whether, under any of the provisions of the Act relied upon by the trustee, none of which are dependent upon the debtor's intent or authority at the time he went into bankruptcy, the community property awarded to Mrs. Damson under the divorce decree is, by operation of law, subject to the claims of any of the creditors in the bankruptcy proceeding. This calls for an application of the statutes in question to the facts of the case.

If, within the meaning of section 70, sub. c of the Act any of the creditors in the bankruptcy could have obtained a lien upon the property set over to Mrs. Damson, the trustee may foreclose that lien. If the award of community property was a fraudulent transfer within the meaning of sections 70, sub. e(1), 67, sub. d(2) (a), or 67, sub. d(2) (b), the trustee may set aside that transfer to the extent contemplated by the Act.

██ The judgment could possibly be sustained on the ground relied upon by the district court if, in Washington, a marital community is regarded as an entity separate and apart from the husband and wife. Then it could be at least plausibly argued that the entity having been terminated by divorce, the property thereof is not subject to adjudication in a bankruptcy proceeding in which only the former husband is debtor. But while there was a long period of time when the Washington courts likened a marital community to an entity,[1] this view was abandoned in 1930, with the decision in Bortle v. Osborne, 155 Wash. 585, 589, 285 P. 425, 427, 67 A.L.R. 1152.[2]

For the reasons indicated the judgment cannot be sustained on the ground relied upon by the district court. But appellee argues, in the alternative, that in any event the correct result was reached when consideration is given to the individual theories relied upon by the trustee. We therefore turn to a consideration of each of these theories.

The first of these is that the creditors of the former marital community who have been scheduled as creditors in the bankruptcy of Mr. Damson could have obtained a lien by legal or equitable proceedings upon the community property which was awarded to Mrs. Damson in the divorce proceeding and therefore, under section 70, sub. c of the Act, the so-called "strong arm" provision, the trustee may foreclose that lien in favor of those creditors.[3]

 As indicated in section 70, sub. c, the property therein referred to need not be property which has come into the possession or control of the bankruptcy court. Nor is the lien therein referred to limited to encumbrances upon property

---

1. Washington decisions so holding extend from Holyoke v. Jackson, 3 Wash.T. 235, 239, 3 P. 841, 842, to Mattinson v. Mattinson, 128 Wash. 328, 222 P. 620.

2. See Mechem, "Creditors' Rights in Community Property," 11 Wash.L.Rev. 80, 86, in which the view was expressed that Bortle v. Osborne seems to " * * * unequivocally explode the entity theory of community. * * * " See, also, 1 de Funiak, Principles of Community Property § 95, at pages 267–268.

3. The second sentence of section 70, sub. c, pertinent here, reads as follows:
 "The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists."

in which the bankrupt has legal title. It extends to all property " * * * upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy * * * ." Thus since, under Washington law, those creditors of the bankrupt who were creditors of the former marital community could have obtained a lien by legal or equitable proceedings upon the community property set over to Mrs. Damson,[4] section 70, sub. c broadly read, would seem to vest similar rights in the trustee.

Recourse to the legislative history of the Act of July 7, 1952, section 23(e) of which clarified section 70, sub. c of the Bankruptcy Act, indicates, however, that the latter section, as amended, should not be read this broadly. See H.R.Rep. No. 2320, 82nd Cong., 2d Sess. 16 (1952), 1952 U.S.Code Cong. and Admin.News, Vol. 2, pages 1960, 1976. According to this House Report, what was intended to be said is that the trustee " * * * has the rights of a lien creditor upon property in which the bankrupt has an interest or as to which the bankrupt may be the ostensible owner." See, also, 4 Collier on Bankruptcy, (14th ed.) § 70.47 [4], p. 1396.[5]

 So reading section 70, sub. c, which speaks as of the date of bankruptcy and not any prior date, and bearing in mind that when the petition was filed Damson had no interest in, or ostensible ownership of, the community property which had been awarded to Mrs. Damson, we hold that the trustee has come into no rights by virtue of that section of the Act.

 There is another reason why we reach the same conclusion. Under section 70, sub. c the trustee does not succeed to rights that run to creditors "personally," as distinguished from their rights as creditors of the bankrupt. See 4 Collier on Bankruptcy (14th ed.), § 70 [4], pp. 1398–1399. The liens which creditors of the marital community could assert against the community property awarded to Mrs. Damson are not based upon their claims against the bankrupt. Recovery of judgment by the former community creditors against the bankrupt would not constitute a lien, either legal or equitable, upon Mrs. Damson's property. Such a lien as Washington law confers upon these creditors is one which could be asserted against Mrs. Damson independently of any remedy they may assert against Mr. Damson. See Dizard & Getty v. Damson, 63 Wash.2d 530, 387 P.2d 964. They are liens which would not be affected by Damson's discharge in bankruptcy. They are accordingly liens "personal" to these creditors which may not be enforced by the trustee under section 70, sub. c.

For the reasons indicated, we hold that the trial court did not err in granting summary judgment for Mrs. Damson, insofar as relief under section 70, sub. c was sought.

The second theory on which relief is sought by the trustee is that the award of community property to Mrs. Damson pursuant to the decree of divorce was a transfer made or suffered by Mrs. Damson within the meaning of the Act, which transfer was fraudulent under the laws of Washington as against, or voidable by, those creditors of Mr. Damson who were creditors of the former marital community and therefore, under section 70,

---

4. Dizard & Getty v. Damson, 63 Wash.2d 530, 387 P.2d 964; Hanson v. Hanson, 55 Wash.2d 884, 350 P.2d 859; Farrow v. Ostrom, 16 Wash.2d 547, 133 P.2d 974; Capital Nat'l Bank v. Johns, 170 Wash. 250, 16 P.2d 452.

5. At 4 Collier, *ibid.* p. 1399, this observation is made:
 "Sound bankruptcy administration is not served by a construction that exploits the literal potentialities of language, intended only or primarily to clarify, as a basis for overturning long accepted limitations on the trustee's power to interfere with rights and property not belonging to the bankrupt." (Footnote omitted.)

sub. c(1) of the Act such transfer was null and void as against the trustee.[6]

■ Passing the question of whether the award of property pursuant to the divorce decree was a "transfer" within the meaning of section 70, sub. e(1), we conclude that, in any event, such award was not, under the laws of Washington, "fraudulent as against or voidable for any other reason by * * *." the creditors of the former marital community.

It is true, as pointed out above, that these creditors have and may enforce equitable liens against the property so set over to the wife. This, however, is not because the award was "fraudulent" or "voidable" as to creditors of the marital community, but because the award purported only to settle property rights as between husband and wife, leaving unaffected the preëxisting rights of third persons. See Farrow v. Ostrom, 16 Wash.2d 547, 552, 133 P.2d 974, 976; Arneson v. Arneson, 38 Wash.2d 99, 227 P.2d 1016.

■ A "fraudulent" or "voidable" transfer may be set aside and the property returned to the transferor or his representative. This is just what the trustee would be empowered to do, under section 70, sub. e(2), if this theory were found to be meritorious. We are not aware of any Washington decision in which it was held that creditors of a marital community which has been terminated by divorce may set aside a property award on the basis that it was a fraudulent transfer. Their only right as against such property is to enforce an equitable lien.

We accordingly conclude that the trial court did not err in granting summary judgment for Mrs. Damson, insofar as relief was sought under section 70, sub. e(1).

The third theory relied upon by the trustee in seeking relief in this action is that the award of community property to Mrs. Damson pursuant to the divorce decree was a transfer within the meaning of the Act, made by or on behalf of Mr. Damson without fair consideration within one year prior to the filing of the bankruptcy petition and therefore fraudulent as against the trustee under section 67, sub. d(2) (a), because it assertedly left Mr. Damson insolvent, and under section 67, sub. d(2) (b), because it assertedly left in Mr. Damson's hands an unreasonably small capital with which to carry on his construction business.[7]

Mrs. Damson argues that the award to her of community property pursuant to the decree of divorce was not a "transfer" within the meaning of section 67, sub. d (2).

The term "transfer" as used in section 67, sub. d(2) is defined in section 1(30) of the Act, 11 U.S.C. § 1(30), in the

---

6. Section 70, sub. e(1) reads as follows:
 "A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor."
 With regard to this particular theory, the trustee focuses attention upon state law, and not federal law, pertaining to fraudulent transfers.

7. Section 67(d) (2) (a) and (b) read as follows:
 "Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; or (b) as to then existing creditors and as to other persons who become creditors during the continuance of a business or transaction, if made or incurred without fair consideration by a debtor who is engaged or is about to engage in such business or transaction, for which the property remaining in his hands is an unreasonably small capital, without regard to his actual intent; * * *."

broadest possible terms.[8] As there defined, the term includes, among other things, any " * * * mode, direct or indirect, of disposing of or of parting with property 'or' with an interest therein or with the possession thereof * * * absolutely or conditionally, voluntarily or involuntarily, by or without judicial proceedings * * *."

The question of whether a particular occurrence is a "transfer" within the meaning of the Act is a matter of federal characterization. McKenzie v. Irving Trust Co., 323 U.S. 365, 369–370, 65 S.Ct. 405, 89 L.Ed. 305. Therefore in deciding whether the occurrence in question was a "transfer" we are not concerned with what label Washington law has placed upon occurrences of this kind. We do however, look to Washington law to determine what was actually done as a preliminary to applying the tests of "transfer" set out in section 1(30) of the Act.

Prior to the divorce Mr. and Mrs. Damson each had a vested, equal, undivided interest in the community property.[9] Thus, if the award to Mrs. Damson had been limited to one half of the community property it is at least arguable that no property interest of Mr. Damson's was transferred to his wife.

Under section 1(30), however, a "transfer" is not limited to dispositions of property interests, but expressly includes any mode of disposing of or parting with the "possession" of property. Mr. Damson, along with Mrs. Damson, had joint possession of all of the community property, concomitant with his undivided one-half interest therein. As to the part awarded to Mrs. Damson, he lost such possession and thus suffered a "transfer." [10]

As for the excess, if any, over fifty per cent of the community property set over to Mrs. Damson the award constituted a transfer of an interest in property theretofore held by Mr. Damson, within the meaning of section 1(30).

For the reason stated we do not agree with Mrs. Damson that the summary judgment, insofar as it rejects the trustee's theory based on section 67, sub. d(2), is sustainable on the ground that the award of community property to Mrs. Damson was not a "transfer" within the meaning of the Act. No other ground for sustaining this facet of the judgment has been suggested.

The trustee does not contend that he was entitled to a judgment in his favor on this ground pursuant to his cross motion for summary judgment. Under Rule 56(c), Federal Rules of Civil Procedure, a summary judgment may be entered only where there is no genuine issue as to any material fact. The trustee concedes that he is not entitled to prevail under section 67, sub. d(2) (a) unless Mr. Damson was insolvent at the time of the transfer, or thereby rendered insolvent. Likewise, the trustee concedes that he is not entitled to prevail under section 67, sub. d(2) (b) unless the property remaining in Mr. Damson's hands after the transfer was an unreasonably small capital with which to carry on his construction business. These questions of insolvency and capitalization present genuine issues as to material facts, requiring a trial in the district court.

8. Section 1(30) reads as follows:
 " 'Transfer' shall include the sale and every other and different mode, direct or indirect, of disposing of or of parting with property or with an interest therein or with the possession thereof or of fixing a lien upon property or upon an interest therein, absolutely or conditionally, voluntarily or involuntarily, by or without judicial proceedings, as a conveyance, sale, assignment, payment, pledge, mortgage, lien, encumbrance, gift, security, or otherwise; the retention of a security title to property delivered to a debtor shall be deemed a transfer suffered by such debtor; * * *."

9. United States v. Merrill, 9 Cir., 211 F.2d 297, 301; In re Heringer's Estate, 38 Wash.2d 399, 405, 230 P.2d 297, 301.

10. As pointed out below, however, this part of the transfer was for a fair consideration, and so was not fraudulent under section 67, sub. d(2).

█ While the parties have not adverted to it in their arguments in this court, we also call attention to the fact that, regardless of insolvency or lack of capitalization, no transfer is fraudulent under section 67, sub. d(2) (a) or (b) unless " * * * made or incurred without fair consideration * * *." [11]

The transfer to Mrs. Damson was made pursuant to a decree of divorce granted to her. Having granted a divorce it was the duty of the divorce court, under Rev. Code of Wash. § 26.08.110 to make such disposition of the property of the parties, either community or separate:

" * * * as shall appear just and equitable, having regard to the respective merits of the parties, to the condition in which they will be left by such divorce or annulment, to the party through whom the property was acquired, and to the burdens imposed upon it for the benefit of the children. * * *" [12]

█ To the extent that the value of the community property awarded to Mrs. Damson was offset by the value of the community property awarded to Mr. Damson, the "transfer" to Mrs. Damson was, as a matter of law, supported by "fair consideration," as that term is defined in section 67, subd. d(1) (e). To this extent the award to each amounted to no more than an equal partition of property in which, as indicated above, they each at all times had a vested, equal undivided interest.

To the extent that the award of community property to Mrs. Damson may have exceeded half of the total value of the community property, there is a question whether, under all of the circumstances, Mr. Damson received fair consideration as a matter of law.[13] As the parties have not presented argument on this question we leave it undecided at this time. If Mr. Damson did not receive fair consideration as a matter of law, then there will be a question of fact to be resolved as to this, as well as on the issues of insolvency and capitalization.

From what has been said it will be evident that, at most, the trustee can enforce rights only to the extent, if any, that the value of the award to Mrs. Damson exceeded one half of the total value of the community property. If the trustee is found to have enforceable rights under section 67, sub. d(2) in any such excess award, he may exert them only for the benefit of those creditors in the bankruptcy proceeding who were creditors of the former marital community, for Mr. Damson's separate creditors have no

11. As stated in section 67, sub. d(1) (e) of the Act, 11 U.S.C. § 107, sub. d(1) (e), consideration given for the property or obligation of a debtor is "fair" " * * * (1) when, in good faith, in exchange and as a fair equivalent therefor, property is transferred or an antecedent debt is satisfied, or (2) when such property or obligation is received in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared with the value of the property or obligation obtained."

12. It is the law in Washington that the disposition of property in divorce actions is within the wide discretion of the trial court, and the supreme court of that state will not substitute its judgment unless there has been a manifest abuse of discretion. See Friedlander v. Friedlander, 58 Wash.2d 288, 362 P.2d 352; Thompson v. Thompson, 56 Wash.2d 683, 355 P.2d 1. Insofar as we are advised, no appeal was taken from the decree of divorce in Damson v. Damson.

13. It could be argued that obtaining one's release from a marriage, pursuant to a decree of divorce, and in connection therewith, obtaining a limitation upon the obligation, not terminated by divorce, to provide future support, such limitation being effectuated by a provision for alimony, give rise to a conclusive presumption of "fair consideration" for any transfer of community property made under that decree, unless made in bad faith or fraudulently. It may also be noted that, in this case, the obligation of Mr. Damson to provide future support for Mrs. Damson, was perhaps greater than in the ordinary case because Mrs. Damson was totally blind.

claim on the property awarded to Mrs. Damson.

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.