**APPLE VALLEY BLDG. & DEVELOP-MENT CO., Inc., Appellant,**

v.

**BONANZA AIR LINES, INC., Appellee.**

**No. 22614.**

United States Court of Appeals, Ninth Circuit.

March 3, 1970.

Joseph D. Mullender, Jr. (argued), Stephen A. Cirillo, Joseph A. Ball, of Ball, Hunt, Hart & Brown, Long Beach, Cal., for appellant.

Clyde R. Maxwell (argued), Daniel R. Sheahan, of Maxwell & Sheahan, Los Angeles, Cal., Arthur M. Taylor, Phoenix, Ariz., for appellee.

Before DUNIWAY, HUFSTEDLER and KILKENNY, Circuit Judges.

DUNIWAY, Circuit Judge:

Apple Valley Building and Development Co. (Apple Valley) sued Bonanza Air Lines (Bonanza) in a diversity action to recover rent, ordinary landing fees, and excess weight landing fees all alleged to be due under the terms of a written lease of an airport. The rent and ordinary landing fees claimed were admittedly due. Excess weight fees were claimed from June 1, 1960. Liability for these was denied. The trial court entered a summary judgment in favor of Bonanza and Apple Valley appeals. We reverse.

Bonanza claims that clause 3(b) of the agreement between Apple Valley and Bonanza (the excess weight fees clause) does not appear correctly in the written contract, and that there was mutual mistake regarding the interpretation of this clause. Bonanza's interpretation of the excess weight fees clause would result in markedly lower charges for excess weight.[1]

As an affirmative defense, Bonanza claims that Apple Valley waived any excess weight fees. Bonanza claims that although Apple Valley knew in June of 1960 that Bonanza was using an aircraft which was of a size to incur excess weight fees, Apple Valley made no claim for such fees until January of 1965. Apple Valley claims that it first became aware that Bonanza's planes were liable for excess weight fees in February of 1964.

The lease agreement between Bonanza and Apple Valley provided that a fixed landing charge of 6 cents per thousand pounds should be charged for aircraft with a gross landing weight of up to 25,000 pounds. The excess weight clause then charged 50 cents per thousand pounds for the weight over 25,000 pounds. When the lease was signed in 1957 Bonanza was using DC-3 aircraft with a gross landing weight of 25,000 pounds. On June 1, 1960 Bonanza commenced using the Fairchild F-27A aircraft on flights into Apple Valley. This aircraft had a gross landing weight of 36,000 pounds.[2]

In July of 1962 the written lease expired and Bonanza began a month to month occupancy paying the same rent and ordinary landing fees as it had paid under the written agreement. In January 1965 Apple Valley billed Bonanza for excess weight fees for the first time. Bonanza refused to pay the excess weight fees. This action was commenced in February of 1966.

■ Summary judgment is an extraordinary remedy, and should only be granted when there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). See also DePinto v. Provident Security Life Insurance Co., 9 Cir., 1967, 374 F.2d 50, cert. denied, 389 U.S. 822, 88 S.Ct. 48, 19 L.Ed. 74; Britt v. Damson, 9 Cir., 1964, 334 F.2d 896, cert. denied 379 U.S. 966, 85 S.Ct. 661, 13 L.Ed. 2d 560; Brawner v. Pearl Assurance Co., 9 Cir., 1958, 267 F.2d 45. In this case there were two main areas of controversy. 1. The parties are in disagreement about the construction to be placed on the excess weight fee clause of the contract. 2. There is disagreement about whether there was a waiver of excess weight fees by Apple Valley. On the issue of the interpretation of the disputed clause Bonanza submitted affidavits of two of its officers which stated that the disputed clause had been discussed in a meeting between Apple Valley and Bonanza which was held on April 22, 1960, that the Bonanza executives explained their interpretation of the clause, and that they were not contradicted by Apple Valley. Apple Valley submitted affidavits to the effect that there had been no such meeting. Apple Valley also submitted the deposition of a former Bonanza vice president who testified that she had helped negotiate the lease with Apple Valley and that the excess weight clause was understood by Bonanza to mean what Apple Valley claims it meant.

On the issue of waiver, Bonanza argues that Apple Valley knew in April of 1960 that Bonanza was about to install heavier aircraft on the Apple Valley run. This point is supported by the two affidavits mentioned. In opposition to this

---

1. Under Bonanza's interpretation of the excess weight fees there would be a charge of fifty cents per thousand pounds of excess weight *per schedule*. Apple Valley interpreted the clause to mean fifty cents per thousand pounds per landing. Since two schedules per month,

*e. g.*, a 9 A.M. and a 3 P.M., could mean as many as sixty landings per month, the difference between the two interpretations of the clause is significant.

2. The weight of the F-27A was subsequently increased to 37,500 pounds.

were three affidavits of Apple Valley representatives. Two, who were alleged to have been at the meeting, denied any recollection of it; one stated that the Apple Valley company records held no indication of such a meeting.

One of those said to have been at the meeting swore that he "did not have anything whatever to do with the negotiations of lease terms for the Apple Valley Airport before January 26, 1965." The other states in his affidavit, "I did not ever discuss the excess weight landing fee provision of the Apple Valley Airport Lease with Bonanza representatives."

█ The affidavits must be viewed in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 1962, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176; Consolidated Electric Co. v. United States, 9 Cir., 1966, 355 F.2d 437. So read, the affidavits do raise material issues of fact. A trial is required.

Reversed and remanded.