725 F.2d 1197
 10 Collier Bankr.Cas.2d 347, 11 Bankr.Ct.Dec. 945,
Bankr. L. Rep. P 69,758
 In re Judith Lynne MADRID, Debtor.
Judith Lynne MADRID, Appellant,
v.
LAWYERS TITLE INSURANCE CORP., and Donald Turney, Appellees.
 No. 82-4433.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 18, 1983.
Decided Feb. 13, 1984.
 
 Victor Perri, Vernon E. Leverty, Alan R. Smith, Miller & Daar, Reno, Nev., for appellant.
 Timothy J. Henderson, Henderson, Nelson & Moschetti, Reno, Nev., for appellees.
 Leon L. Vickman, Encino, Cal., for Mortgage Brokers Institute.
 Peter G. Clark, Oakland, Cal., for Richard O. Burke.
 Noel W. Nellis, Morrison & Foerster, San Francisco, Cal., for American College of Real Estate Lawyers.
 Appeal from the United States Bankruptcy Appellate Panel of the Ninth Circuit.
 Before GOODWIN, TANG and FARRIS, Circuit Judges.
 TANG, Circuit Judge:
 
 
 1
 The sole question before us is whether the nonjudicial foreclosure sale of appellant's home may be set aside under 11 U.S.C. Sec. 548(a) of the Bankruptcy Code. The bankruptcy court, 10 B.R. 796, set aside the sale, finding that a "transfer" occurred at the foreclosure and that less than reasonably equivalent value was paid to the debtor. The Bankruptcy Appellate Panel, 21 B.R. 424, reversed, holding that reasonably equivalent value is paid as a matter of law when there is a regularly conducted foreclosure sale.
 
 
 2
 We agree that the foreclosure sale cannot be set aside, but do not base our holding on the question of reasonably equivalent value. We hold that the sale must be upheld because the transfer of the home occurred at the time of perfection of the trust deed, not upon foreclosure.
 
 BACKGROUND
 
 3
 In September, 1979, Judith Madrid purchased a home near Lake Tahoe, Nevada for $290,000. Madrid made a $125,000 down payment and executed a one-year note, secured by a first deed of trust on the residence, for the balance of $165,000. The $125,000 down payment was financed through Del Mar Commerce Company and secured by a second deed of trust on the same property. Appellee, Lawyers Title Insurance Corporation, is the substituted trustee under the second deed.
 
 
 4
 Madrid subsequently defaulted on payments due under both deeds. Pursuant to Nevada state law, Nev.Rev.Stat. Secs. 107.080 and 21.130 (1979) and provisions in the second deed of trust, the trustee commenced foreclosure proceedings on the second deed. After proper notice and publication, the property was sold on January 9, 1981, at a nonjudicial foreclosure sale to appellee, Donald Turney. Turney is in the business of buying and selling foreclosure properties. At the time of sale, approximately $176,000 was due on the first deed, and approximately $80,200 was due on the second deed. Turney, the sole bidder, paid the amount due on the second deed plus one dollar. He took the property subject to the first deed, which was also in the process of foreclosure.
 
 
 5
 On January 16, 1981, seven days after the foreclosure sale, Madrid filed a petition for reorganization under Chapter XI of the Bankruptcy Code. Madrid, as a debtor-in-possession, then brought an action in bankruptcy court to set aside the sale as a fraudulent conveyance under 11 U.S.C. Sec. 548(a)(2)(A) & (B)(i), which states:
 
 
 6
 (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor--
 
 
 7
 * * *
 
 
 8
 (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
 
 
 9
 (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
 
 
 10
 * * *
 
 
 11
 The parties agreed that Madrid met the insolvency requirement of Sec. 548(a)(2)(B)(i). Thus, the question addressed by the courts below was whether there had been a transfer of Madrid's property interest within one year prior to filing of the Chapter XI petition, for which Madrid received less than a reasonably equivalent value.
 
 
 12
 The bankruptcy court agreed with Madrid that the sale should be set aside as a fraudulent conveyance. The court found, without discussion, that a nonjudicial foreclosure sale constituted a transfer under 11 U.S.C. Sec. 101(41), albeit an involuntary transfer. The bankruptcy court then set aside the sale, concluding that the reasonably equivalent value requirement of Sec. 548(a)(2)(A) had not been met.
 
 
 13
 The Bankruptcy Appellate Panel reversed the bankruptcy court. The Panel held that the consideration received at a noncollusive and regularly conducted nonjudicial foreclosure sale satisfied the reasonably equivalent value requirement of Sec. 548(a)(2)(A) as a matter of law, and thus the sale could not be set aside. Although the Panel failed to address the transfer issue, it apparently assumed that the sale constituted a transfer under Sec. 548(a).
 
 ANALYSIS
 
 14
 Since the Bankruptcy Appellate Panel's conclusion rests on a question of law, it is subject to independent review by this court. Lama Co. v. Union Bank, 315 F.2d 750, 752 (9th Cir.1963). While we agree with the Panel that the sale should not be set aside under Sec. 548(a)(2)(A), we base our reasoning on different legal principles.
 
 
 15
 We conclude that the foreclosure sale was not a transfer under Sec. 548(a), and do not decide whether the amount paid at foreclosure was a reasonably equivalent value. For reasons that follow, we hold that the transfer of Madrid's property interest under Sec. 548(a)(2)(A) occurred at the time the second deed of trust was perfected under Nevada law. That transfer was carried out more than one year prior to filing of the bankruptcy petition. Thus, the transfer was not voidable as a Sec. 548(a)(2)(A) fraudulent conveyance.
 
 Arguments of the Parties
 
 16
 Madrid's Sec. 548 petition seeks to avoid and set aside the allegedly fraudulent transfer of her equity interest in the residence. Yet before Madrid may avail herself of the relief provided under Sec. 548(a), she must demonstrate that there has been a transfer of the residence within one year prior to filing of the bankruptcy petition. She alleges that such a transfer occurred at the nonjudicial foreclosure sale. Appellees, however, take the position that the only transfer that has taken place is the transfer at the perfection of the trust deed. They argue that the trust deed was perfected more than a year prior to the filing of the bankruptcy petition, and is thus not subject to avoidance as a fraudulent conveyance. See In re Alsop, 14 B.R. 982 (Bkrtcy.Alaska 1981), aff'd, 22 B.R. 1017 (D.Alaska 1982).[1] We agree with the latter contention.
 
 Historical Review
 
 17
 The modern law of fraudulent conveyances finds its origins in the 1570 English enactment of 13 Eliz., ch. 5. See 4 Collier, Collier on Bankruptcy, p 67.29 (14th ed. 1978); 4 H. Remington, Remington on Bankruptcy, Sec. 1638 (rev. ed. 1957). The statute was passed for the protection of creditors, and gave the creditors, inter alia, the power to avoid conveyances and transfers made with the intent and purpose to hinder, delay or defraud creditors. The American codification of this bankruptcy law was set forth in the Bankruptcy Act of 1898. A review of Sec. 67e of the 1898 Act demonstrates that it dealt only with conveyances made with actual intent to defraud.
 
 
 18
 The Chandler Act of 1938 replaced Sec. 67e with Sec. 67d. The 1938 Act expanded the law of fraudulent conveyances by creating "constructive fraudulent conveyances". This expansion permitted the setting aside of conveyances made by a debtor without fair consideration, regardless of the debtor's actual intent. 11 U.S.C. Sec. 67d(2)(a-c). The most recent codification of the fraudulent conveyance statute is at Sec. 548(a)(2)(A) & (B)(i).
 
 
 19
 In our short historical review of the fraudulent conveyance statutes we have found no evidence that the lineal ancestors of Sec. 548(a)(2) were to be used to attack a secured creditor's enforcement of a lien as a constructive fraudulent conveyance. These statutes instead provide authority for the proposition that conveyances are set aside when there is actual fraud or a situation indicative of fraud, such as the transfer of property for less than reasonable equivalence.
 
 Legislative History
 
 20
 The statutory development of time of transfer for Sec. 548 purposes underscores the conclusion that the enforcement of a valid lien was not intended to be covered by Sec. 548. The first appearance of a section pinpointing time of transfer for fraudulent conveyance purposes was in Sec. 67d of the 1938 Chandler Act. That section read:
 
 
 21
 For the purposes of this subdivision d, a transfer shall be deemed to have been made at the time when it became so far perfected that no bona fide purchaser from the debtor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein, but, if such transfer is not so perfected prior to the filing of the petition initiating a proceeding under this Act, it shall be deemed to have been made immediately before the filing of such petition.
 
 
 22
 11 U.S.C. Sec. 67d(5) (repealed 1978). This formula for determining time of transfer remains significantly unchanged in Code Sec. 548(d)(1). The Uniform Fraudulent Conveyance Act, progenitor of the constructive fraudulent conveyance statutes, contained no comparable provision defining time of transfer. This raises the question why Congress added such a provision.
 
 
 23
 The answer lies in the legislative history, which demonstrates that by defining transfer for fraudulent conveyance purposes in terms of time of perfection, Congress effected two purposes: (1) time of perfection served as the pivotal point in computing the reach-back period during which the bankruptcy trustee could set aside fraudulent conveyances; and (2) a secret, i.e., unperfected transfer would not escape the trustee's avoidance powers by the trustee's failure to attack it within the reach-back period, since an unperfected transfer was not deemed a transfer for Sec. 67d purposes. See H.R.Rep. No. 1409, 75th Cong., 1st Sess. 31-34 (1937). Again, the workings of Congress display no intent to treat lien enforcement activities as constructive fraudulent conveyances.
 
 Time of Perfection
 
 24
 The question of whether a particular occurrence is a transfer for bankruptcy purposes is a matter of federal characterization. McKenzie v. Irving Trust Co., 323 U.S. 365, 369-70, 65 S.Ct. 405, 406, 89 L.Ed. 305 (1945). State law, in turn, supplies the determination of the time and method of perfection. See id.; Evans v. Valley West Shopping Center, Inc., 567 F.2d 358, 360 (9th Cir.1978) (per curiam).
 
 
 25
 For purposes of Sec. 548(a)(2), a transfer occurred when Del Mar's security interest in Madrid's residence was perfected under Nevada law. The security interest took the form of a second deed of trust, and under Nevada law perfection of a deed of trust occurs upon proper execution and recordation. Nev.Rev.Stat. Sec. 111.353; Aladdin Heating Corp. v. Trustees of Central States, 93 Nev. 257, 258, 262, 563 P.2d 82, 83, 86. In this case, perfection of the second deed of trust occurred more than one year prior to the filing of the bankruptcy petition. Therefore, the transfer is not subject to attack under Sec. 548.[2]
 
 Ninth Circuit Precedent
 
 26
 Our holding is consonant with prior Ninth Circuit decisions. See Britt v. Damson, 334 F.2d 896 (9th Cir.1964), cert. denied, 379 U.S. 966, 85 S.Ct. 661, 13 L.Ed.2d 560 (1965); Glessner v. Massey-Ferguson, Inc., 353 F.2d 986 (9th Cir.1965), cert. denied, 384 U.S. 970, 86 S.Ct. 1859, 16 L.Ed.2d 681 (1966). Britt involved a trustee's suit against the bankrupt's former wife to set aside as a fraudulent transfer a community property award made to the wife in prior divorce proceedings. We agreed with the trustee that the bankrupt previously held joint possession of the community property, and as to the part awarded to his wife, he lost possession and thus suffered a transfer for Sec. 67d(2) purposes. Britt, however, did not involve a valid, pre-existing lien; the only activities which constituted a transfer in Britt occurred at the time of the award in the divorce proceedings.
 
 
 27
 This distinguishing fact is highlighted by Glessner v. Massey-Ferguson, Inc., 353 F.2d 986. In Glessner the debtor signed a contract of conditional sale which was not filed by the creditor. The contract reserved title in the seller until full payment of the purchase price. Upon default, the creditor repossessed the subject property. Two months later, the debtor filed bankruptcy. We agreed that the repossession of the property was a preferential transfer under Sec. 60a(2) of the Act. The reason the repossession constituted a transfer, however, was because the creditor had failed to file the contract for public record as required by Arizona statute; otherwise, had the security interest been properly recorded, the transfer for Sec. 60a(2) purposes would have occurred at the time the contract was perfected by recordation. Id. at 992. The result reached in Glessner is consistent with the result reached herein.
 
 Fifth Circuit Precedent
 
 28
 Madrid's position that the nonjudicial foreclosure constituted a transfer finds some support in Durrett v. Washington Nat'l Ins. Co., 621 F.2d 201 (5th Cir.1980). In this case the Fifth Circuit held that under Bankruptcy Act Sec. 67d (comparable to Code Sec. 548(a)), a transfer occurs at a foreclosure sale. In reaching its conclusion, however, the court relied on the extremely broad definition of transfer set out in 11 U.S.C. Sec. 1(30) of the Bankruptcy Act:
 
 
 29
 "Transfer" shall include the sale and every other and different mode, direct or indirect, of disposing of or of parting with property or with an interest therein or with the possession thereof or of fixing a lien upon property or upon an interest therein, absolutely or conditionally, voluntarily or involuntarily, by or without judicial proceedings, as a conveyance, sale, assignment, payment, pledge, mortgage, lien, encumbrance, gift, security, or otherwise; the retention of a security title to property delivered to a debtor shall be deemed a transfer suffered by such debtor.
 
 
 30
 If we were to apply this definition to the case at bar, we would be ignoring the applicable, narrower definition of transfer set out in Sec. 548(d)(1). See In re Alsop, 14 B.R. at 986 ("Although the transaction that occurred at the foreclosure sale might, standing alone, satisfy the definition of transfer of Sec. 101(40), that definition does not stand alone in Sec. 548."). We also agree with the dissent in Abramson v. Lakewood Bank & Trust Co., 647 F.2d 547, 549-50 (5th Cir.1981) that a foreclosure sale is not a transfer by a debtor, as required under Sec. 67(d) (now Sec. 548(a)) of the Act, but rather is an involuntary conveyance triggered by the debtor's failure to fulfill some obligation in the promissory note secured by a mortgage or deed of trust. For the above reasons, as well as the other grounds set out in our opinion, we reject the reasoning of Durrett.
 
 Policy Considerations
 
 31
 In the case at bar, Madrid seeks to create a de facto redemption right to obtain real property previously sold at foreclosure proceedings. Appellees and amici argue, and we agree, that creating such a redemption right under bankruptcy laws will adversely affect commercial and real estate laws, long within the domain of the states. Creating a federal de facto right of redemption under the bankruptcy laws is clearly contrary to Nevada real property law. See, e.g., Nevada Land and Mortgage Co. v. Hidden Wells Ranch, Inc., 83 Nev. 501, 504-505, 435 P.2d 198, 200-201 (1967); Golden v. Tomiyasu, 79 Nev. 503, 516-518, 387 P.2d 989, 996-97 (1963), cert. denied, 382 U.S. 844, 86 S.Ct. 89, 15 L.Ed.2d 85 (1965).
 
 
 32
 We also agree with appellees and amici that creation of a de facto right of redemption would significantly chill participation at foreclosure sales, where sale prices--not subject to the usual economic competitive forces--already are frequently lower than the actual value of the property sold. See In re Alsop, 14 B.R. at 987-88. Negative repercussions would also be likely in the lending arena, where creditors would be less willing to lend funds on the security of a mortgage or deed of trust. No support for this drastic upset of state laws and procedures is found in the Bankruptcy Code.
 
 
 33
 Alternative Remedies Available to Debtor and Creditors
 
 
 34
 Finally, we point out that the harmful and disruptive rule which Madrid urges this court to adopt is not necessary to protect debtors or to preserve the assets of their estates for creditors. First, ample protections were afforded Madrid under Nevada's statutory system prior to the actual time of the foreclosure sale. See Nev.Rev.Stat. Secs. 107.080, 21.130 (1979). Second, if the debtor is unable or unwilling to pursue state statutory methods to protect his or her equity during the notice period, a voluntary bankruptcy petition may be filed which would automatically stay any foreclosure sale. 11 U.S.C. Sec. 362. If the debtor fails to file a voluntary bankruptcy petition, then creditors may file an involuntary petition under Sec. 303 of the Code which would also stay the foreclosure sale. 11 U.S.C. Sec. 303.
 
 
 35
 If bankruptcy is filed prior to foreclosure, the debtor and the unsecured creditors have a variety of protections under the Bankruptcy Code to capture any equity in the property, subject to providing adequate protection to the secured creditor. The debtor-in-possession (if a Chapter XI or XIII is filed) could repay the indebtedness secured by the trust deed being foreclosed over a period of time as part of a Chapter XI or XIII plan, and thereby retain the possession and use of the property. 11 U.S.C. Secs. 363, 1129, 1325. The debtor-in-possession or the trustee could also sell the property, and realize upon any equity therein. Id. at Sec. 363. Additionally, the debtor may borrow against the property to draw out the equity, and impose a lien upon the property to secure that borrowing. 11 U.S.C. Sec. 364.
 
 
 36
 When the foreclosure sale is completed prior to bankruptcy petition filing, the debtor's options are admittedly more limited. Attacks have been made under numerous theories with varying degrees of success. See, e.g., In re Jones, 20 B.R. 988, 990-91 (Bkrtcy.E.D.Pa.1982) (property subject to automatic stay of Sec. 362(a) since debtor retained some interest in property for period of time following foreclosure; therefore, sale set aside as a Sec. 549(a) post-petition transfer); In re Castillo, 7 B.R. 135, 3 Collier Bankr.Cas.2d (MB) 351, 355 (Bkrtcy.S.D.N.Y.1980) (Sec. 510(c) equitable subordination attack available where secured creditor engages in inequitable conduct); In re Jordan, 5 B.R. 59, 2 Collier Bankr.Cas.2d (MB) 635, 636-37 (Bkrtcy.N.J.1980) (preferential transfer attack made under Sec. 547). Whatever the merits of these challenges, we do not add to the arsenal of bankruptcy powers the right to avoid a nonjudicial, regularly conducted foreclosure sale of real property.
 
 Conclusion
 
 37
 We are reminded that the purposes of the Bankruptcy Code are either to "rehabilitate financially a distressed debtor or to assemble and liquidate his assets for distribution to creditors." H.R.Rep. No. 595, 95th Cong., 1st Sess. 10, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5963, 5971 (footnotes omitted). To this end, Congress has been explicit about the underlying theme operational in a bankruptcy setting:
 
 
 38
 In either kind of proceeding, the nature of bankruptcy is to sort out all of the debtor's legal relationships with others, and to apply the principles and rules of the bankruptcy laws to those relationships. Bankruptcy is mainly a procedural device, prescribing the method of accomplishing rehabilitation or liquidation, but generally leaving undisturbed legal relationships that existed before bankruptcy.
 
 
 39
 Id.
 
 
 40
 The legal relationship between debtor and secured creditor is a long-recognized and well-established one in the history of English and American jurisprudence. We find no Congressional intent to upset this relationship in the Sec. 548(a)(2) context presented herein. For the reasons stated above, the holding of the Bankruptcy Appellate Panel is
 
 
 41
 AFFIRMED.
 
 FARRIS, Circuit Judge, concurring:
 
 42
 I agree with the majority that the nonjudicial foreclosure sale of Madrid's home was not a voidable transfer, but our reasons for the result differ. Madrid seeks to set aside the sale as a fraudulent conveyance under 11 U.S.C. Sec. 548. Section 548 forbids two kinds of fraudulent transfers, those with intent to defraud and those where no intent need be shown because the inadequacy of consideration leads to an irrebutable presumption of fraud. Madrid proceeds under the second theory, contained in the following portions of Sec. 548:
 
 
 43
 (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor--
 
 
 44
 * * *
 
 
 45
 (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
 
 
 46
 (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.
 
 
 47
 The problem with Madrid's argument is that she did not transfer the property. After she defaulted, the foreclosure proceeded without her participation or consent. I recognize that the definition of "transfer" at 11 U.S.C. Sec. 101(41) (West Supp.1983) includes "involuntary" transfers, but Sec. 548 permits the trustee to set aside a transfer "if the debtor ... received less than a reasonably equivalent value" (emphasis added). This language contemplates that the debtor was the seller or otherwise participated in the transaction.
 
 
 48
 The power to set aside transfers for less than "reasonably equivalent value" is an outgrowth of the prohibition against fraudulent conveyances by debtors. Congress created an irrebutable presumption of fraud in certain cases of insufficient consideration. One cannot presume fraud by the debtor in a transaction where the debtor was not a party. Section 67(d) of the prior Bankruptcy Act, virtually identical in all substantive respects to the present Sec. 548, applied only to "transfers made ... by debtors." If the language of Sec. 548 does not reflect the debtor's active role as clearly as that of its predecessor, the purpose and origin of the present statute give clarity of meaning to phrases that might otherwise be ambiguous. I would therefore hold that only transfers where the bankrupt was a participant can be set aside for absence of "reasonably equivalent value."[1]
 
 
 49
 The majority opinion would also find no voidable transfer here. It states that the transfer occurred when Madrid signed the deed of trust 15 months before filing for bankruptcy. Section 548 does not permit the trustee to set aside transfers made more than one year before filing for bankruptcy. The flaw in this approach is its assumption that there can be only one transfer. The debtor who gives a creditor a security interest in his property--a transfer for Sec. 548 purposes if the security interest is sufficiently perfected under Sec. 548(d)(1)--often retains an interest in the property, such as possession, that can be transferred at a later date. As I understand the majority's rationale, such subsequent transfers would not be covered, even if effected with actual intent to defraud. Section 548(d)(1), relied upon by the majority, does not support the "one transfer" rule. That section addresses the problem of secret transfers by refusing to recognize transfers that are not sufficiently open to be valid against bona fide purchasers.
 
 
 50
 The majority's rationale sweeps more broadly than I believe necessary or desirable. I would hold that Sec. 548 cannot be used to set aside transfers where the debtor was not a participant. I agree that we should affirm the bankruptcy appellate panel.
 
 
 
 [1]
 Alternatively, appellees argue that even if a second transfer occurred at the time of foreclosure, when Madrid's equity in the property was transferred to the purchaser, Nevada state law dictates that the title of the purchaser at a foreclosure sale relates back to the time of the execution of the deed of trust. See Aladdin Heating Corp. v. Trustees of Central States, 93 Nev. 257, 262, 563 P.2d 82, 86 (1977); Erickson Constr. Co. v. Nevada Nat'l Bank, 89 Nev. 350, 353, 513 P.2d 1236, 1238 (1973); see also In re Alsop, supra, 14 B.R. at 986. As we hold that a transfer under Sec. 548(a) does not occur at time of foreclosure, we do not base our holding on the relation back doctrine
 
 
 [2]
 Our holding is in accord with cases decided under the preferential transfer section of the Bankruptcy Code (current Code Sec. 547; former Sec. 60a of the Act). The principle running throughout those cases is that enforcement of a valid lien within four months of bankruptcy petition filing cannot be struck down as a preferential transfer where the lien was perfected outside the four-month reach back period. No matter what enforcement mechanism was employed, transfer for purposes of the preferential transfer section occurred at time of perfection of the lien, and not at time of enforcement. See, e.g., Evans v. Valley West Shopping Center, Inc., 567 F.2d 358, 360 (9th Cir.1978) (per curiam); DuBay v. Williams, 417 F.2d 1277, 1287-88 (9th Cir.1969); Clements v. Snider, 409 F.2d 549, 551 (9th Cir.1969)
 
 
 [1]
 The Fifth Circuit has taken a different view in Durrett v. Washington National Insurance Co., 621 F.2d 201 (5th Cir.1980) and Abramson v. Lakewood Bank and Trust Co., 647 F.2d 547 (5th Cir.1981). I agree with the dissenting judge in Abramson that "Durrett is simply wrong in its holding that a foreclosure is a transfer within the meaning of Sec. 67d [of the prior bankruptcy act]." Id. at 549