**In the Matter of R & T ROOFING STRUCTURES & COMMERCIAL FRAMING, INC.**

**UNITED STATES of America, etc., Appellant,**

v.

**Harold Z. DANIEL, Appellee.**

No. CV–R–86–536–ECR.
Bankruptcy No. BK–81–17.
Adv. No. 82–381.

United States District Court,
D. Nevada.

Oct. 7, 1987.

David Bunning, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., and William Maddox, U.S. Atty., Reno, Nev., for appellant.

Bruce D. Roberts, Reno, Nev., for appellee.

EDWARD C. REED, Jr., Chief Judge.

This case is before the Court on appeal from an order of the United States Bankruptcy Court for the District of Nevada dated October 6, 1986. The October 6 order granted summary judgment in favor of the plaintiff/appellee trustee of the Chapter 7 estate of the debtor, R & T Roofing Structures & Commercial Framing, Inc.; the October 6 order also denied a cross motion for summary judgment made by defendant/appellant United States of America. The October 6 order incorporated by reference an order of the bankruptcy court dated September 20, 1984, 42 B.R.

908, which had denied an earlier motion for summary judgment made by appellant.

The order appealed from required the United States to turn over $18,850.18, plus interest, to the appellee.

The bankruptcy court found that on October 23, 1980, within ninety days of the debtor's January 1, 1981, filing of a Chapter 7 petition, the United States levied upon and seized the sum of $18,850.18 from the general office bank account of the debtor at Pioneer Citizens Bank in Reno, Nevada. The levy was found to be in satisfaction of a duly noticed tax lien—perfected more than ninety days prior to the filing of the debtor's petition—for unpaid employee withholding taxes. The bank account was the only asset of the debtor's estate available to the trustee. The bankruptcy court found that there were unpaid wage claims and unpaid administrative expenses with a higher priority under the Bankruptcy Code than the claim of the United States. The bankruptcy court concluded that the seizure was an avoidable preference under 11 U.S.C. § 547(b). The bankruptcy court ruled that the seizure did not amount to the fixing of a statutory tax lien that would be unavoidable under 11 U.S.C. § 547(c).

On appeal the United States makes three arguments. First, it argues that the October 23, 1980, levy and seizure of the debtor's funds did not constitute a transfer of the debtor's interest in property insofar as the seized funds were held to satisfy trust fund liabilities. Second, the appellant argues that the transfer, if any, occurred at the time of the filing of the notice of lien, more than ninety days before the filing of the debtor's bankruptcy petition. Third, the appellant asserts that the October 23, 1980, levy and seizure constituted the fixing of a statutory lien, and, thus, is unavoidable pursuant to 11 U.S.C. § 547(c)(6).

This Court reviews the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law *de novo*. *See* Bankruptcy Rule 8013; *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir.1986).

■ This Court finds no merit in the appellant's argument that the bankruptcy court erred in not finding that the $18,-850.18 was held in trust by the debtor on behalf of the government. The importance of the bankruptcy court's finding on this point is that transfer is an essential element of a finding of an avoidable preferential transfer under 11 U.S.C. § 547(b), and if the $18,850.18 was held in trust for the benefit of the United States, it was not transferred on the date of the seizure, and there could not have been a preferential transfer.

The bankruptcy court found as a fact that the $18,850.18 was seized from the debtor's "general office bank account." The Court sees no evidence that suggests that funds withheld from employees' wages were segregated in any way from other funds of the debtor. There was no special tax account. The Court also sees no evidence that the $18,850.18 seized can be traced to taxes withheld by the debtor. The bankruptcy court's finding of fact that the $18,850.18 came from general debtor funds cannot be disturbed.

The appellant appears to argue that, as a matter of law, any amount owed the government by an employer as withholding taxes is held in trust for the government, and therefore is not transferred when seized. The appellant cites *In re Rodriguez*, 50 B.R. 576 (Bkrtcy.E.D.N.Y.1985) and *In re Razorback Ready–Mix Concrete Co.*, 45 B.R. 917 (Bkrtcy.E.D.Ark.1984). Those cases are factually alike and were decided based on nearly identical reasoning. Each case involved a trustee of a debtor in bankruptcy attempting to recover payments made voluntarily by the debtor in satisfaction of a tax lien within ninety days of the filing of a bankruptcy petition. The two courts looked to 26 U.S.C. § 7501 and to 11 U.S.C. § 547 and ruled that the taxes withheld had been held in trust for the government. The court in the *Razorback* case wrote:

[T]he intent of Congress in enacting Section 547 of the Bankruptcy Code, as reflected in the legislative history accompanying that section, was that a "payment of withholding taxes constitutes a pay-

ment of money held in trust ... and thus will not be a preference." The legislative report adds the proviso that this is true "if [the taxes] have been properly held for payment," but considers the proviso as having been complied with "if the debtor is able to make the payments." House Report No. 95–595, 95th Cong., 1st Sess. (1977) p. 373, U.S.Code Cong. & Admin.News 1978, p. 6329. Thus, although Congress recognized the need under 26 U.S.C. Section 7501(a) of having a specific fund upon which to impress a trust, it also recognized that in situations like the one presented here if the debtor was able to make the payments, designated the payments as "taxes due" *and* delivered the payments to the government, the monies could be labeled trust funds and the debtor's duty as trustee was accomplished.

Although the debtor did not specifically separate the withheld taxes from its general operating funds, payments for these taxes from this account were as per the debtor's usual payment practice. This court agrees with the Government's assertion that the designation by the debtor of the three payments in issue as "taxes due" along with delivery to the Government protected these funds just as if the taxes had been set aside as a separate fund. The debtor should not now be allowed to fall back upon its own accounting practices to undo that which was accomplished before the filing of the bankruptcy petition.

*Razorback*, 45 B.R. at 922.

The *Razorback* case and the *Rodriguez* case are, thus, distinguishable from the case at bar.

In this case the debtor did not deliver the $18,850.18 to the government; the government seized that money. Certainly, it cannot be said that the $18,850.15 was paid to the government by way of the debtor's usual payment practice. In the case at hand the debtor did not hold the seized $18,850.18 in trust for the government.

The case of *United States v. Randall*, 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273

(1971) supports this Court's conclusion rejecting the appellant's trust theory. In *Randall* a debtor in possession under Chapter XI of the Bankruptcy Act (repealed in 1979 and replaced by the present Bankruptcy Code) was ordered by the court to pay withheld taxes into a special account. The debtor did not comply. Later, it was adjudged bankrupt. The United States then sought payment of withheld taxes prior to payment of the costs and expenses of administration of the bankruptcy proceedings. The referee denied the request. The district court agreed with the referee, and the court of appeals affirmed. The Supreme Court also affirmed. That Court acknowledged 26 U.S.C. § 7501(a) which is cited by appellants and which provides that, generally, withheld taxes are in trust for the government. The Court, however, went on to rule the more specific priority provisions of the Bankruptcy Act were the overriding statement of federal policy on the question of the treatment of withheld taxes in bankruptcy. The Court said:

> We think the statutory policy of subordinating taxes to costs and expenses of administration would not be served by creating or enforcing trusts which eat up an estate, leaving little or nothing for creditors and court officers whose goods and services created the assets.

*Randall*, 401 U.S. at 517, 91 S.Ct. at 994. *See also United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) (The reorganization estate includes property seized by the United States in satisfaction of a tax lien just prior to the filing of the Chapter 11 petition.).

■ Next, the Court addresses the appellant's argument that the transfer occurred at the time of the filing of the notice of lien, over ninety days before the filing of the debtor's petition. The appellant cites *In re Madrid*, 725 F.2d 1197 (9th Cir.), *cert. denied*, 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984) and *In re Hill*, 39 B.R. 894 (Bkrtcy.D.Or.1984), *rev'd on other grounds*, 775 F.2d 1385 (9th Cir.1985).

The *Madrid* case involved an attempt by a Chapter 11 debtor to set aside a nonjudicial foreclosure sale of her home as a fraudulent conveyance under 11 U.S.C. § 548, where the deed of trust, under which the foreclosure took place, was recorded more than one year prior to the filing of the bankruptcy petition. The Ninth Circuit Court of Appeals held that the sale could not be set aside because the transfer of the home occurred at the time the deed of trust was recorded and not at the time of the foreclosure sale. *Madrid* is distinguishable from the case at bar. Title to real property is transferred when a deed of trust is recorded. On the other hand, title to money does not change hands upon the filing of an Internal Revenue Service notice of lien. Title to money, in a situation such as is before the Court, changes hands only when seized by the government. *In re Hill, supra,* is distinguishable for the same reason.

This Court holds that the transfer of the $18,850.18 in the case at bar occurred when the United States seized that money. There was, therefore, a transfer of the $18,850.18 within ninety days of the debtor's petition, and the transfer element of the preferential transfer is satisfied.

■ The appellant's third and final argument is that the October 23, 1980, levy and seizure of $18,850.18 constituted the fixing of a statutory lien, and, thus, is not avoidable pursuant to 11 U.S.C. § 547(c)(6). 11 U.S.C. § 547(c)(6) states: "The trustee may not avoid under this section a transfer ... that is the fixing of a statutory lien that is not avoidable under section 545 of this title...." Appellant points out that in view of 26 U.S.C. § 6323(b)(1), which protects bona fide purchasers of money, the government's lien remained avoidable under 11 U.S.C. § 545 until the time the $18,850.18 was seized. Appellant asserts that, therefore, its lien was fixed on the date of the seizure.

The term "fixing" is not defined in 11 U.S.C. § 547 or, apparently, anywhere else in the Bankruptcy Code. The appellant pushes the definition of that term too far. This Court holds that "fixing" as used in 11 U.S.C. § 547(c)(6) is not meant to include the seizure of money in satisfaction of a lien.

This means that the lien never became unavoidable under 11 U.S.C. § 545 before it was satisfied through levy and seizure. This result is acceptable. The Court holds that the government's lien in this case was fixed when the notice of lien was filed; it was never fixed so as to be unavoidable under 11 U.S.C. § 545. In view of this holding, 11 U.S.C. § 547(c)(6) does not prohibit avoidance by the trustee of the government's seizure of $18,850.18 of the debtor's funds.

IT IS, THEREFORE, HEREBY ORDERED that the Order of the United States Bankruptcy Court for the District of Nevada, filed on October 7, 1986, and entered on October 8, 1986, granting summary judgment in favor of plaintiff and ordering that the plaintiff shall recover $18,850.18 from the defendant, is AFFIRMED.