**In re Willie Ole KJELDAHL, Debtor.**

**Willie Ole KJELDAHL, Plaintiff,**

**v.**

**UNITED STATES of America, Farmers Home Administration, Defendants.**

**Bankruptcy No. 3–82–1651.**
**Adv. No. 3–82–420.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Aug. 2, 1985.

William King, Atlanta, Ga., for plaintiff.

James Lackner, Minneapolis, for defendants.

JOHN J. CONNELLY, Bankruptcy Judge.

This Chapter 11 case was commenced on August 30, 1982; subsequently an adversary proceeding against the United States was brought by the plaintiff challenging the validity of a prepetition foreclosure sale of the plaintiff's 440-acre farm by the North American State Bank of Belgrade (hereinafter "the bank") to Farmers Home Administration (hereinafter "FmHA") on a number of different theories. After the filing of the adversary proceeding, the running of the Minnesota statutory redemption period was stayed by the bankruptcy court.

By bankruptcy court order dated April 13, 1984, the adversary proceeding was transferred to the United States District Court for the District of Minnesota. The defendant, FmHA, filed a motion for summary judgment which was argued before Judge Robert G. Renner, United States District Court, on October 31, 1984. By order dated February 15, 1985 the court, 52 B.R. 916, found:

1) That the foreclosure sale was not void under Minnesota law;

2) That the redemption period can be extended only pursuant to 11 U.S.C. § 108(b) and therefore the stay of the bankruptcy court was dissolved;

3) That the *Coleman* injunction was inapplicable to the foreclosure sale and that 7 U.S.C. § 1981a does not preclude the FmHA from protecting its legal rights as a junior lienholder;

4) That the plaintiff's allegation that FmHA breached their contractual obligation to extend additional loans failed to

state a claim for which relief could be granted; and

5) The plaintiff failed to exhaust administrative remedies with respect to his tort claim that the FmHA chilled the sale of the Pope County property and that his action was therefore barred for lack of jurisdiction.

The court concluded that the basic allegations in the complaint be dismissed as to both the United States and the named individuals. The court, however, concluded that due to *In re Hulm*, 738 F.2d 323 (8th Cir.1984), the action had to be remanded to the bankruptcy court for an evidentiary hearing on the issue of "reasonable equivalent value" of the property before a determination could be made on plaintiff's complaint that the foreclosure sale constituted a fraudulent transfer under 11 U.S.C. § 548(a)(2).

The sole purpose of the remand was to have the bankruptcy court determine whether the debtor received from FmHA reasonable equivalent value for his interest in the 440-acre farm under the mortgage foreclosure sale. An evidentiary hearing on this issue was held on May 29–30, 1985. At the hearing the debtor was represented by his attorneys William King, Atlanta, Georgia, and Thomas Racette, Minneapolis, Minnesota, and the United States was represented by James E. Lackner, Assistant United States Attorney.

Upon all files and records, the testimony and evidence received at the hearing, the arguments of counsel, the court makes the following findings of fact, conclusions of law, and order in accordance with the Bankruptcy Code and Bankruptcy Rules of Procedure.

## STATEMENT OF FACTS

The underlying facts in this case are not in dispute. The plaintiff, Willie Ole Kjeldahl, is a farmer who owned a 440-acre farm situated in Pope and Stearns Counties, Minnesota. The farm actually consists of two individual farms, a 145-acre tract in Stearns County, plaintiff's residence, and two continuous tracts of land comprising 292 acres in Pope County, approximately five miles distant from the homestead farm.

The plaintiff received numerous loans from FmHA since June, 1975, all of which were secured by mortgages on his real property. Plaintiff acknowledges that he defaulted on the mortgages to FmHA as well as the first mortgage to the bank and that he has been in default since January 1, 1978.

On July 15, 1981, the bank commenced foreclosure by advertisement on the entire 440-acre farm. The sale took place on September 11, 1981 and the entire farm was sold to FmHA as the highest bidder for $273,335.00. The bid price represented the principal plus interest owing on the bank's mortgage ($55,114.95), the costs and expenses of the sale ($852.74), and the principal and interest due and owing on FmHA mortgages ($217,367.13). Since the foregoing foreclosure sale, FmHA has paid real estate taxes due in both Pope and Stearns Counties to avoid foreclosure by tax judgment sale as follows: $3,863.68 to Stearns County for the tax years 1978 through 1983, and $10,787.23 to Pope County for the tax years 1978 through 1983. The parties stipulate that of the foregoing taxes the total sum of $7,282.00 was due and unpaid and constituted a valid lien against the farm at the time of the foreclosure sale. The parties further stipulate to a mechanic's lien claim in existence against debtor's property on September 11, 1981 in the amount of $6,800.00.

Plaintiff alleges that the 1981 foreclosure sale of his farm property constituted a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(2) and that, therefore, as a debtor-in-possession clothed with the power of a bankruptcy trustee, the foreclosure can be avoided. 11 U.S.C. § 548 provides in pertinent part as follows:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within

one year before the date of the filing of the petition, if the debtor—

(2)(A) received less than a reasonably equivalent value in exchange for such transfer of obligation; and (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or become insolvent as a result of such transfer or obligation.

There is no dispute that debtor/plaintiff was insolvent when the sale was held and that the sale occurred within one year before the date of the filing of the Chapter 11 petition.

Judge Renner, in his order of February 15, 1985, determined that the foreclosure sale constituted a "transfer" within the meaning of the Bankruptcy Code, 11 U.S.C. § 101(41) and that is not an issue in this hearing.

■ The Bankruptcy Code does not define "reasonable equivalent value" and the question of how to calculate it has been the subject of much debate in the bankruptcy courts. While *Hulm* does not set forth any formula for determining reasonable equivalent value, the Eighth Circuit stated that the yardstick by which such value should be measured was the "debtor's interest in the property." 738 F.2d at 327. Judge Renner in his order of February 15, 1985 in discussing the "interest of the debtor in property" for purposes of this proceeding stated, "Thus, Kjeldahl was the legal owner of the property until foreclosure. As purchaser at the foreclosure sale, FmHA acquired the vested right to become absolute owner of the property, unless it was redeemed by one who possessed the right of redemption under the statute. Minn. Stat. § 580.23, § 580.24. Kjeldahl retained the statutory right of redemption. Title passed to FmHA subject to divestment by Kjeldahl exercising his right of redemption." Kjeldahl did not redeem from the foreclosure sale. Therefore, it is the debtor's equity interest in the property and not the fair market value which is to be compared with the purchase price paid at the foreclosure sale to determine if reasonable equivalent value was received. The court

has previously noted the various liens of record against the debtor's farm on September 11, 1981.

■ The evidentiary issue to be determined is the fair market value of the plaintiff's 440-acre farm as of September 11, 1981. The fair market value figure is necessary to determine whether "reasonable equivalent value" under § 548(a)(2) was given for the property. The plaintiff called Myron Dixon, a qualified real estate appraiser from Alexandria, Minnesota, to testify on the fair market value. Mr. Dixon testified that the 440-acre tract was worth $554,800.00. FmHA called John Strand, its Pope County supervisor, a qualified real estate appraiser, who testified that the entire farm was worth $323,000.00 on the date of sale. In addition, FmHA introduced county assessor's reports of fair market value of the property for both counties in 1981. The assessor's reports, for both counties combined, state that the fair market value was $250,753.00. The same county assessor's information was placed before the court as data contained in the plaintiff's appraisal reports which are in evidence as debtors's Exhibits 1 and 2.

Dixon did two separate appraisals: one for the plaintiff's 145-acre tract in Stearns County, and the other for the 292 acres located in Pope County. FmHA witness, John Strand, appraised the farm as one entity and did not do a separate appraisal on each farm; his appraisal also used three separate methodologies: the comparable market, summation and capitalization methods to provide a means to verify the accuracy of his analysis. Both appraisers agree that the comparable sales market approach is the best method for determining farmland values. The summation and capitalization testimony of Strand was not of any particular help to the court.

Neither appraisal report is superior to the other so that the court would be justified in accepting one and rejecting the other. The court is of the opinion, however, that Dixon's appraisal is not as reliable as Strand's analysis particularly in view of the paucity of written analysis in Dixon's ap-

praisal. Testimonial credibility is critical in a case such as this where there is a $200,-000.00 disparity of opinion as to the value of the farm.

The Dixon appraisal provides opinions of fair market values as of November, 1983 with no adjustments contained in the appraisals for the two-year period difference between the fair market value as of the date of the foreclosure sale September 11, 1981 and the date of valuations expressed in the appraisal report. However, Dixon's testimony that real estate values in Pope and Stearns Counties continued to rise from 1981 through 1983 is supported by the county assessor's data contained in their reports, in evidence, and the court will accordingly adjust the valuations expressed by Dixon as of November, 1983 downward by 9.9% to reach Dixon's adjusted valuation as of September 11, 1981.

Both appraisers considered a large number of farm sales in preparation of their analysis. Strand, because of his duties as county supervisor, was directly familiar with the six parcels of land used as comparable sales by Dixon in his Pope County farm appraisal and was able to point out significant differences between them and the plaintiff's farm.

Strand appraised the entire farm as having a value of $323,000.00 on July 24, 1981 and testified that was the market value of the farm on September 11, 1981. Dixon found the fair market value on November 17, 1983 for the Stearns County property was $174,200.00; the fair market value, in the opinion of Dixon, on November 15, 1983 for the Pope County property was $380,-600.00. Each appraisal and farm will be examined separately.

## STEARNS COUNTY FARM

To determine that the 145-acre tract in Stearns County was worth $1,200.00 per acre, Dixon relied on sales of "comparable" properties. However, of the eight listed comparables, only one, number 7, in Raymond Township is over 66 acres in size. Tracts of land smaller than 80 acres are not fair comparables for determining fair mar-

ket value of the 440-acre tract involved in this case without significant adjustments being made of sales price. The court finds Strand's testimony that the generally smaller tracts of land sell for more per acre than larger tracts to be credible. No adjustments were made by Dixon when comparing these smaller tracts to plaintiff's Stearns County property which is 145 acres in size.

Based on the testimony of both Dixon and Strand, the court notes differences exist between comparable number 7 and the Stearns County farm; moreover, these differences are not accounted for by Dixon through adjustment in the sale price of the comparable property. There is significant difference between comparable number 7 and the Stearns County farm in that the buildings on comparable number 7 are in better condition; number 7 has a higher percentage of tillable acres; productivity and natural drainage on number 7 are superior; the purchaser of number 7 was an investor, not the typical purchaser, of farmland in Stearns County. Despite these differences, Dixon simply took the per acre purchase price of comparable number 7 and applied it to the plaintiff's Stearn's County property with no adjustments being made for the significant differences in the properties.

Dixon's comparable sales for this farm are not at all supportive of his value opinion and if accepted by the court would have warranted a lower valuation by the court. Similarly, Dixon's method of valuing the buildings on the debtor's property by eyeball comparisons with buildings on another farm is not at all helpful to the court in its fact finding process.

John Strand did not do an independent appraisal of the Stearns County farm. He did, however, testify that the tillable acreage of the farm was worth $700.00–$950.00 per acre. There is disagreement between Strand, Dixon, and debtor, Kjeldahl, as to how much of the farm was tillable crop land.

The court determines the value of the Stearns County farm as of September 11, 1981 to be $133,000.00. This conclusion is based on the following:

| | |
|---|---|
| 1 acre home site | $ 1,500.00 |
| 50 acres at $950.00 per acre | 47,500.00 |
| 35 acres at $800.00 per acre | 28,000.00 |
| 30 acres at $700.00 per acre | 21,000.00 |
| 7 acres at $800.00 per acre (woodlands) | 5,600.00 |
| 7 acres at $200.00 per acre (pasture) | 1,400.00 |
| 12 acres at $100.00 per acre (waste) | 1,200.00 |
| 3 acres at $100.00 per acre (roads) | 300.00 |
| Buildings | 26,500.00 |

The land analysis and building valuation data are largely from Strand's appraisal and testimony; the land classifications are taken from the county assessor's records as there is no other satisfactory evidence in the record regarding land analysis of the debtor's farm.

Dixon in debtor's Exhibit 1 does value the land at $900.00 per acre but he spreads that $900.00 across the whole 145 acres. There is no testimony in the record to support a conclusion that this farmland is worth $900.00 per acre across the board.

## POPE COUNTY FARM

The plaintiff's property in Pope County is approximately 292 acres without buildings. Two hundred seventy nine acres are tillable crop land of which 260 acres are served by irrigation. Dixon's appraisal of the fair market value of the Pope County property is $380,600.00 or $1,300.00 per acre as of November, 1983. This figure must be adjusted downward 9.9% to reflect the value as of September 11, 1981.

Strand's appraisal does not relate specifically to Pope County property except that in part 6 "summation value of farm," he indicates 230 acres of irrigated sandy soil to have a value of $700.00 per acre and his adjusted valuation of irrigated land values is $730.00 to $735.00 per acre, stated in part 3 of his report. Testimony that 57 acres of the Pope County farm was waste-land is contradicted by other testimony and data in the record and the court finds Strand's testimony as to the wasteland to be not credible. Additionally, Strand allows a valuation of $21,000.00 for irrigation equipment in place and in service on the farm.

In this appraisal, Dixon listed six comparables. Five of the six comparables are significantly smaller than the subject Pope County farm. All but one of the comparables specifically comparable number 6 are 80 acres or less. No adjustments were made by Dixon for the difference in size. The court has already noted that comparables involving farms of different sizes must be adjusted for the difference in size in order to be truly comparable.

Soil characteristics are significant in any determination of fair market value for farmland. The soil characteristics of comparable property should either be the same as the subject property or adjustment should be made in the price analysis to account for the differences. In this case, all the comparables used by Dixon except comparable number 6 had Nicollet Webster Loam soil. Pope County subject property does not contain Nicollet Webster Loam soil. It contains Sandy Loam soil which is not as productive. Dixon neither in his analysis nor his testimony made any adjustments for these differences.

The only property used by Dixon which is comparable to the plaintiff's Pope County property in terms of size and soil type is comparable number 6. This comparable is the only comparable used by Dixon containing irrigated land.

Comparable number 6 has an irrigation system capable of providing enough water to grow potato crops. Farmland in comparable 6 is used almost exclusively for this purpose. Potatoes bring approximately three times the gross revenues per acre as either row crops or alphalfa. While the plaintiff's Pope County property has an irrigation system, it has significantly fewer wells and a greatly diminished gallon per minute water pumping capacity compared

to number 6. It cannot sustain the growth of potato crops and no such crops have ever been grown on plaintiff's property. The difference in the type of crops capable of being grown on the two properties was not accounted for by Dixon. Comparable number 6, because it can produce greater revenues, will obviously command a greater purchase price than the subject property.

The financing available on property will affect the purchase price. In 1981 the plaintiff could offer no below market financing arrangements due to his severely strained financial situation. Purchase price of comparable number 6 which sold for $660,000.00 included an assumable contract for deed in the amount of $247,000.00 at 6% interest. Dixon made no adjustment for these differences and the testimony of Strand that there can be as much as 25–30% difference in price of sales because of financial terms is uncontradicted.

Dixon in cross examination acknowledged that soils are a factor in determining what sales to use as comparable sales in making an appraisal, but acknowledge that he did not check the soil makeup on the six comparable sales he used for purposes of evaluating the Kjeldahl farm and in this regard acknowledge that he did not make adjustments in his report for judgment factors which led him to make selection of comparables that he used in his appraisals. The property in comparable number 6 was purchased by an investor to rent out to a potato grower. Potato acreage rents for $140.00 per acre whereas corn acreage in this area rents for about $70.00 per acre. These are factors that have to be taken into account when determining comparability.

The testimony of Strand indicates that he is familiar with each of the farms used as comparable sales by Kjeldahl and that he knows the soil on each one to be different than the soil on the Kjeldahl property.

The two tract Pope County farm has 279 acres of tillable ground capable of producing crops. Two hundred sixty acres of this acreage is serviceable by irrigation which enhances the land value—allowance for the enhancement is recognized in the court's valuation of the 279 acres at $800.00 per acre; the remaining 12 acreage in the tract are valuated as wasteland at $100.00 per acre. Irrigation equipment is valued apart from the land and $21,000.00 is added to the overall valuation of the farm to account for its value. The court determines that the total fair market value of the Pope County farm on September 11, 1981 was $245,400.00. The total market value unadjusted by other relevant factors of debtor/plaintiff's farm on September 11, 1981 was $378,400.00.

Taking into account the general market conditions as evidenced by the plaintiff's inability to find a purchaser for the Pope County farm after having offered the farm for sale prior to the time of foreclosure sale, the status of this farm as distressed property under threat of foreclosure and the reality of deferred right of possession of property from time of sale for one year due to the plaintiff's statutory right of redemption, the court believes a discount of 25% from the appraised value is justified and realistically reflects the fair market value of the plaintiff's farm on September 11, 1981.

The best approach for determining value of this farm is the comparable market data approach. Comparable sale method of determining value is limited by appraisers' judgments of what are true comparable sales. Sales are affected by size. Soils are a factor as are financing conditions that are available to the buyer and, finally, the buyer himself is a factor to be considered. Testimony of the appraisers indicate that over 50 sales were considered in arriving at the comparable sales that were presented to the court in this case. Land tracts are not identical. Appraisers must use judgment for adjustment of sales, up or down, to indeed be a substitute for the subject property. There are subjective judgments that an appraiser must make in selecting the comparables by which he will test his judgment of value. The court, in its fact

finding process, weighs these valuations in making its own judgment.

## CONCLUSIONS OF LAW

For the purposes of determining reasonable equivalent value under Title 11 U.S.C. § 548(a)(2), the court considers the fair market value as of the date of the sale less all nonforeclosed liens on the property, the balance equals the debtor's equity interest which was transferred at the sale. The bid price paid at the sheriff's foreclosure sale equals the value received by the debtor for the transfer of his interest in the property sold by the sale.

The value of real property offered for sale while under a threat of mortgage foreclosure is adversely affected. "The very nature of a foreclosure proceeding, coupled with the equity of redemption under state law, lowers the fair market value of foreclosed property." *In re Reinboldt v. Travelers Insurance Company*, 39 B.R. 677 (D.Minn.Bkrptcy.1983), aff'd. *In re William*, 39 B.R. 678 (D.C.Minn.,1984), the overhanging cloud of a foreclosure sale on the plaintiff's property in September, 1981 lessened the fair market value of the property.

A 25% discount from the perceived market value of comparable property is justified and is realistic under all the facts and circumstances relating to this property in September, 1981.

The court determines that the total fair market value of the debtor/plaintiff's farm on September 11, 1981 was $283,800.00.

Under § 548(a)(2), FmHA has paid reasonable equivalent value for the interest of the debtor in the property sold.

Because the court finds that reasonable equivalent value was paid, there is no violation of § 548. The foreclosure sale conducted on September 11, 1981 of debtor's farm property has lawfully, pursuant to Minnesota Statutes, been transferred to FmHA.

ACCORDINGLY, IT IS ORDERED, ADJUDGED, AND DECREED that that certain mortgage foreclosure sale of plaintiff's property on September 11, 1981 did not result in a fraudulent transfer under 11 U.S.C. § 548 of the plaintiff's interest in the property foreclosed upon and title to debtor's farm has passed to FmHA under and pursuant to M.S.A. § 580.12.

IT IS FURTHER ORDERED that this adversary proceeding be and the same is hereby dismissed.

## MEMORANDUM

The debtor-in-possession may avoid transfer of the foreclosure sale if he received less than a reasonable equivalent value in exchange for the transfer of his property, if the transfer occurred within one year of the filing of the petition in bankruptcy and if he was insolvent at the time of the transfer, or was rendered insolvent by the transfer. Plaintiff, in a fraudulent transfer action, must focus on the relevant element of value which determines the ultimate question of fair equivalence. It is the actual monetary value of the property transferred as measured by what a buyer and seller, neither under compunction to complete the transaction and bargain in good faith and at arm's length, would accept and the projected ease and speed with which the value could be translated into cash in light of the type of property involved, and the current market conditions.

Proof under Code § 548 requires plaintiff's carrying of the burden that the transferor received less than a reasonable equivalent value in exchange for the transfer. The purpose of § 548(a)(2) is to preserve for the creditors of the estate valuable assets which might otherwise be lost. Secured creditors are not entitled to windfalls, but neither may they be deprived of their security because of bankruptcy. The Eighth Circuit has noted that application of this section is not in harmony with long established state law mortgage foreclosure and redemption procedures. *Hulm*, supra, at 327. Exactly what Congress had in mind by using this language, "reasonable equivalent value," in this section is not readily apparent, particularly when one

considers the adequacy of § 67(d)(2) of the old Bankruptcy Act—the predecessor of this section. However, what it does mean to this court is not an exact exchange of dollar of debt for dollar of value but something in between that reasonable minds can look at and say, "That's close," "That's all right," "That's acceptable," or "That's fair."

■ Disparity between the total secured debt and value of collateral alone does not call for a finding of lack of reasonable equivalent value. Whether the transfer is for reasonable equivalent value is a fact question to be determined in light of the facts presented in each particular case. There are no precise formulas to measure this standards of consideration given for a transfer of land. The court considers other factors besides valuations. Market value of the plaintiff's farm, however, is the keystone of the court's decision.

Use of evidence of comparable sales in determining market value on the whole reflects the principal of a willing seller and willing buyer concluding arm's length transactions. What they do not reflect, however, are the current market conditions and other facts peculiar to the particular tract of land in question and the conditions under which it is being sold. The court recognizes the difficulty in achieving exact comparability, and the relative importance of the sale of comparable property is reflected in the weight it is given by the court in the particular proceedings. Comparable sales, to carry much weight, must reflect similar characteristics of the property—geographic proximity, and not unusual financial circumstances either in the terms of the sale or the parties involved.

One of the main functions of this court is to deal with liquidation of real and personal property in what is generally regarded as distressed situations. The court believes that, in view of the circumstances present in this case, the farm under foreclosure, the effort by the debtor prior to the foreclosure sales to sell the Pope County farm at his price and receiving only an offer of $270,000.00, which he did not regard as a very good offer because of the inability of the prospective buyer to get financing, the potential for further denial of possession of the property to the prospective buyer by reason of the foreclosure sale and potential bankruptcy, warrants a 25% discount from the appraised value to arrive at a fair market value which would be a reasonable equivalent value for the transfer of the debtor's interest in the foreclosed property.

The court determined the market value of the Kjeldahl farm based on the market data and testimony appraisers offered without any adjustment for the fact that the farm was up for distress farm foreclosure sale on September 11, 1981. Neither FmHA nor the debtor offered any testimony or evidence in this regard; nevertheless, it is a factor taken into consideration in determining the ultimate issue of fair market value.

This was not an ordinary sale. Minnesota law ordained that a sale of this farm be held at an exact time and exact hour and place. Clearly, this is a factor the court must consider in determining reasonable equivalent value. The market value applied to property offered for sale by proper advertising and in an open market is one thing, but it is a concept with considerably less flexibility when it is viewed against a sale mandated by state law in distressed conditions. Kjeldahl owned the farm. He had offered it for sale at his price before the foreclosure sale but received no bonafide offer. FmHA offered that which is the traditional bid at foreclosure sales in Minnesota—principal, interest, and costs. It was the only bid and it was accepted.

Debtor had the right of redemption; if the price received was thought to be inadequate, he could have sold his right of redemption, sold the property, or refinanced and redeemed the property from the sale. After the foreclosure sale, the debtor did offer the property for sale but received no offers. This again reflects the market conditions and lack of interest in this particular property at and about the time of the foreclosure sale. The plaintiff says the property is worth in excess of $200,000.00

more than what FmHA bid at the foreclosure sale. That is a lot of margin to work with. I believe it is much too high and certainly is not supported by the record in this case.

In September, 1982, one year after the foreclosure sale, a tract of land situated in the same section and across the road from the plaintiff's farm sold for $900.00 per acre. This sale is of a tract of lesser size and occurred at a time when there had been an approximate rise of 10% in values, as reflected by the county assessor's report.

FmHA discounted the market value of the debtor's interest by 25% when it made its bid at the sheriff's sale. It cannot be said that this is not the reasonable equivalent value of the debtor's interest considering the condition of the market as evidenced by the debtor's own efforts to dispose of the property before foreclosure. Moreover, the one-year redemption period which would prohibit FmHA or any other bidder from disposing of the property for a year's time until redemption period expired and the potentiality of the debtor filing bankruptcy which could conceivably result in a further delay of possession for an indeterminate time is a factor affecting the price a bidder would be willing to pay at foreclosure sale. Prospects of interminimal delay and legal expenses would be weighed heavily by any prospective buyer. Considering these circumstances, a bid price reflecting a 25% discount of the fair market value constituted a reasonable equivalent value for the debtor's interest.