In re Luis Jose VERNA, Debtor.

Luis Jose VERNA, et al., Plaintiffs,

v.

Frank DORMAN, Defendant.

Bankruptcy No. LAX 85–54112–SB.
Adv. No. LA 85–4506–SB.

United States Bankruptcy Court,
C.D. California.

Feb. 4, 1986.

Stephen Bryson, Los Angeles, Cal., for debtor/plaintiff Verna.

Leon L. Vickman, Encino, Cal., for defendant Dorman.

AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW DENYING PRELIMINARY INJUNCTION AND GRANTING RELIEF FROM AUTOMATIC STAY

SAMUEL L. BUFFORD, Bankruptcy Judge.

█ Is a sale to a third party in a regularly conducted and non-collusive non-judicial foreclosure sale, within a year prior to the filing of the bankruptcy petition, a fraudulent conveyance under Bankruptcy Code § 548, 11 U.S.C. § 548 (1982 and Supp. II 1984), as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA")?[1] The Court concludes that such a sale is a "transfer" of

the property, but that such a sale establishes the reasonably equivalent value of the property as a matter of law. In consequence, such a sale cannot be attacked under section 548 as a fraudulent conveyance.

## I. FACTUAL BACKGROUND

Debtor Luis Jose Verna filed the underlying Chapter 13 bankruptcy case on August 16, 1985, after the effective date of BAFJA.

Prior to June 20, 1985 the debtor was the owner of a home in La Verne, California. In his Chapter 13 statement the debtor asserted that the fair market value of the property was $115,000. Prior to June 20, 1985 the property was encumbered by a first trust deed recorded in 1977 in favor of Shearson/American Express Mortgage Corporation ("Shearson") with an outstanding balance of approximately $51,000, and a second trust deed in favor of Transamerica Credit Corporation with an outstanding balance of approximately $8,300.

On June 20, 1985 Shearson foreclosed on its first trust deed under California state law, and the property was purchased at the foreclosure sale by defendant Frank Dorman for $51,250, which was $743.45 more than the outstanding encumbrance on the Shearson trust deed. Dorman is unrelated to Shearson and, according to the description of his counsel at oral argument, is in the business of purchasing and reselling distressed properties.

The Court has made no independent determination of the value of the property. No facts are brought before the Court to indicate that the foreclosure sale was collusive or otherwise not regularly conducted, and the Court notes that the complaint to set aside the transfer makes no such claim.

1. As amended, section 548(a) provides in relevant part:

The trustee may avoid any transfer of an interest of the debtor in property ... that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

. . . . .

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was

incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

After the foreclosure sale, Dorman brought an unlawful detainer action in Los Angeles County Municipal Court, and obtained judgment and a writ of possession. After this case was filed Dorman sought relief from the automatic stay to pursue his efforts to obtain possession of the property. On November 7, 1985 this Court granted such relief, but postponed its effective date to December 2, 1985, on condition that the debtor tender payment in the amount of $750, which the Court determined to be the reasonable monthly rental value of the property.

The debtor filed this adversary proceeding against Dorman on November 27, 1985 to attack the sale to Dorman as a fraudulent conveyance under Bankruptcy Code § 548. The debtor brought an application for a temporary restraining order on December 2, 1985, to restrain Dorman from proceeding with his state court eviction and to restrain him from conveying the property to a third party who may not have notice of the debtor's claim herein. The application was denied without prejudice because of inadequate proof of service, and was renewed on December 4, 1985. The Court granted a temporary restraining order on December 4, 1985, which restrained Dorman's efforts to take possession of the property, on condition that the debtor tender an additional $750 to Dorman. The Court took the preliminary injunction application under submission on December 13, 1985 after hearing oral argument, and found good cause to continue the temporary restraining order for an additional ten days, pursuant to Bankruptcy Rule 7065 and Rule 65(b) of the Federal Rules of Civil Procedure.

## II. RELIEF AVAILABLE

Although the application before the Court is for a preliminary injunction, the Court notes that it can grant relief with respect to the unlawful detainer action by modifying its prior order that conditionally lifted the automatic stay. Accordingly, the Court treats the application before it as an application to modify its prior order.

The debtor also requests a preliminary injunction to prohibit Dorman's transfer of the property to a third party, who may not have notice of the claims asserted in this adversary proceeding. The Court notes that the debtor has a right under California Code of Civil Procedure § 409 (West Supp. 1986) to record a lis pendens, which would accomplish the same purpose. Accordingly, no relief is needed from the Court on this issue.

## III. FRAUDULENT CONVEYANCE

The elements of a fraudulent conveyance under section 548 are: (1) A "transfer" of an interest of the debtor (2) within one year of the date of filing of the petition (3) for less than a reasonably equivalent value (4) while the debtor was insolvent, or rendering him insolvent. *Willis v. Borg-Warner Acceptance Corp. (In re Willis)*, 48 B.R. 295, 299 (S.D.Tex.1985).

Dorman makes no claim that the debtor was solvent after the foreclosure sale. Shearson obtained its deed of trust some eight years before the bankruptcy petition was filed. Thus this Court must determine whether the foreclosure sale, which occurred less than two months before the petition was filed, constituted a transfer of the debtor's interest, and whether the debtor received less than a reasonably equivalent value for it.

For the reasons stated below, the Court finds that the facts before the Court do not support a fraudulent conveyance claim.

### A. *Transfer*

#### 1. *Ninth Circuit Precedent*

The principal Ninth Circuit case on whether a foreclosure sale is a transfer is *Madrid v. Lawyers Title Insurance Corp. (In re Madrid)*, 725 F.2d 1197 (9th Cir. 1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984), which affirmed on different grounds the bankruptcy appellate panel's decision in *Madrid v. Lawyers Title Insurance Corp. (In re Madrid)*, 21 B.R. 424 (Bankr.App. 9th Cir.1982).

The bankruptcy appellate panel reversed the bankruptcy court decision in *Madrid v.*

*Del Mar Commerce Co. (In re Madrid)*, 10 B.R. 795 (Bankr.D.Nev.1981), which rescinded a foreclosure sale for $256,000 of property with a fair market value of $380,000 to $400,000. The bankruptcy appellate panel held that a non-collusive and regularly conducted non-judicial foreclosure sale prior to the filing of a bankruptcy case cannot be challenged as a fraudulent conveyance, because the consideration received in such a sale establishes "reasonably equivalent value" as a matter of law. 21 B.R. at 426. *Accord, Moore v. Gilmore (In re Gilmore)*, 31 B.R. 615 (E.D.Wash.1983). The Panel in *Madrid* found it unnecessary to address the issue of whether the sale constituted a transfer under section 548(a).

The Ninth Circuit in *Madrid* did not consider the issue of reasonably equivalent value, because it held that the foreclosure sale was not a transfer at all as defined in Bankruptcy Code § 101(40) [predecessor of present section 101(48)].[2] The Ninth Circuit held that, for purposes of section 548(a)(2), the only transfer occurs when a security interest in the property is perfected under state law. As in this case, the security interest in *Madrid* was perfected more than one year prior to the filing of the bankruptcy case. The Ninth Circuit held that this perfection put the transaction beyond the reach of section 548.

### 2. *Other Precedents*

Both the Ninth Circuit and the Bankruptcy Appellate Panel decisions in *Madrid* are contrary to the Fifth Circuit rule (that the trial court had followed) of *Durrett v. Washington National Insurance Co.*, 621 F.2d 201 (5th Cir.1980), where the court held that a non-judicial foreclosure involved

two separate transfers. In addition to the transfer of the trust deed, the court in *Durrett* found that, at the time of the foreclosure sale, there was a second transfer of the equity interest in the property.[3] In *Durrett* the court found that the second transfer was a fraudulent conveyance, because the fair market value of the property was $200,000 and the foreclosure sale brought only $115,400 (exactly the amount necessary to cover the indebtedness secured by the deed of trust). The court held that a transfer of the equity interest in the property at the foreclosure sale for less than 70% of its fair market value was a fraudulent conveyance.

The Eighth Circuit took a view similar to the Fifth Circuit in a pre-BAFJA case, *Hulm v. First Federal Savings (In re Hulm)*, 738 F.2d 323, 325 (8th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984), where it held that a judicial foreclosure was a transfer of an interest of the debtor in property under section 548(a). The court rejected the view of the Ninth Circuit Bankruptcy Appellate Panel in *Madrid*, that the foreclosure sale established a reasonably equivalent value of the transfer, and remanded the adversary proceeding for an evidentiary hearing on this issue. *Accord, Kjeldahl v. Farmers Home Administration (In re Kjeldahl)*, 52 B.R. 926 (Bankr.D.Minn.1985).

In contrast to the Fifth and Eighth Circuits, the Sixth Circuit followed the Ninth Circuit's *Madrid* decision in *In re Winshall Settler's Trust*, 758 F.2d 1136 (6th Cir. 1985), a pre-BAFJA case,[4] in holding that a foreclosure sale was not a transfer.[5]

**2.** Section 101(48) provides:

   "'transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption."

   The last phrase, "and foreclosure of the debtor's equity of redemption", was added by BAFJA in 1984.

**3.** The Fifth Circuit followed its *Durrett* decision in *Abramson v. Lakewood Bank & Trust Co.*,

647 F.2d 547 (5th Cir.1981), *cert. denied,* 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1981), where the court reversed a summary judgment and held that a foreclosure sale was a "transfer" under section 67d of the Bankruptcy Act.

**4.** BAFJA is only effective for Bankruptcy cases filed on or after October 8, 1984. Thus courts continue to apply the pre-BAFJA law in decisions in cases filed before that date.

**5.** The Sixth Circuit in *Winshall* also took the position that a foreclosure sale establishes

The bankruptcy court adopted the Ninth Circuit Bankruptcy Appellate Panel's *Madrid* rationale (with no reference thereto) in the pre-BAFJA case, *In re Upham*, 48 B.R. 695 (Bankr.W.D.N.Y.1985).

### 3. *1984 Legislation—BAFJA*

BAFJA was drafted in 1984 to address inter alia the *Madrid/Durrett* problem. It proposed to resolve the problem with three changes in the Bankruptcy Code: (i) amending the definition of "transfer" in section 101 of the Bankruptcy Code to specify that it encompasses the "foreclosure of the debtor's equity of redemption"; [6] (ii) amending section 548 to emphasize its applicability to transfers where the debtor "voluntarily or involuntarily" receives less than reasonably equivalent value; and (iii) granting an irrebuttable presumption of reasonably equivalent value to any mortgagee or third-party purchaser who purchases mortgaged property at a regularly conducted non-collusive foreclosure sale for a price equal to the full amount of the mortgage debt. The first change was designed to adopt the *Durrett* analysis of "transfer", and to overrule that of the Ninth Circuit in *Madrid*. The second change was designed to overrule the concurring opinion in the Ninth Circuit's *Madrid* decision, which would have held that section 548 does not apply to involuntary transfers. The third change would have adopted in essence the Ninth Circuit Bankruptcy Appellate Panel's reasoning in *Madrid*.

However, in the debate on the floor of the Senate, Senator Metzenbaum objected to resolving the *Madrid/Durrett* issue in the bill, because this issue had not been considered in committee. In consequence, the bill was amended to delete the third provision. However, the first two provisions, which adopted the *Durrett* analysis of the "transfer" issue, were left in the bill. In this form, the bill was enacted on July 10, 1984 and the relevant portions became effective on October 8, 1984.

It came to the attention of the Senate that the final version of BAFJA may not have treated the *Madrid/Durrett* issue exactly as intended. In consequence, on October 5, 1984 Senators Robert Dole and Dennis DeConcini inserted into the Congressional Record a scripted colloquy, which did not occur on the Senate floor, in which Senator Dole reported that the statute was amended, "to delete ... all provisions dealing with the *Durrett* issue." 130 Cong.Rec. S13771 (Daily ed. October 5, 1984) (statement of Sen. Dole). Senator Dole further stated,

> Consequently, no provision of the bankruptcy bill as passed by this body was intended to intimate any view one way or the other regarding the correctness of the position taken by the U.S. Court of Appeals for the Fifth Circuit in the *Durrett* case, or regarding the correctness of the position taken by the U.S. Court of Appeals for the Ninth Circuit in *Lawyers Title Insurance Co. v. Madrid*, 725 F.2d 1197 (9th Cir.1984), which reached a contrary result.

Senator DeConcini added, "Then I am correct in concluding that parties in bankruptcy proceedings who seek avoidance of prepetition foreclosure sales would find no support for their arguments in these amendments?". Senator Dole responded, "The Senator's conclusion is correct." 130 Cong.Rec. S13771–13772 (Daily ed. October 5, 1984) (statement of Sen. Dole).

Notwithstanding the foregoing colloquy, the Court is persuaded that BAFJA did in fact change the law on setting aside pre-pe-

---

reasonable equivalence, absent fraud, unfairness or oppression. Although this view is obiter dictum in the case, the court followed the reasoning of the Ninth Circuit Bankruptcy Appellate Panel in *Madrid*.

**6.** A standard trust deed conveys the title of real estate to the trustee, who holds it for the benefit of the lender. A trustor retains possession of the property, and the "equity of redemption", which is his right to redeem the property by payment of the loan. A sale pursuant to a power of sale in a trust deed forecloses this equity of redemption by cutting off the right to redeem.

251

tition fraudulent conveyances.[7] When Congress added the "foreclosure of the debtor's equity of redemption" to Bankruptcy Code § 101(48), the result was to validate the *Durrett* analysis, that any foreclosure of a security interest is a "transfer" of the debtor's equity of redemption, as defined in this section.[8] This analysis is supported by the change that Congress made in the language of section 548(a), in adding the words "voluntarily or involuntarily".

By making the foregoing statutory changes Congress *nolens volens* overruled the Ninth Circuit decision in *Madrid,* and validated the analysis of the *Durrett* decision. Thus this Court is not bound by the Ninth Circuit's holding in *Madrid.*

At the same time, Congress took no position on the Ninth Circuit Bankruptcy Appellate Panel's reasoning in *Madrid,* that a non-collusive and regularly conducted foreclosure sale establishes reasonably equivalent value.

Congress may not have originally intended the foregoing result. However, Congress enacted the statutory language, and not its intention. Moreover, when Congress' attention was called to the possible discrepancy between the statutory language and what it intended, it failed to enact corrective legislation. In consequence, the Court concludes that, even if Congress did not initially intend to affirm *Durrett's* analysis of the "transfer" issue and to overrule the Ninth Circuit's decision in *Madrid,* Congress did intentionally leave this result undisturbed when its attention was called to what it had accomplished. *United States v. Rutherford,* 442 U.S. 544, 554 n. 10, 99 S.Ct. 2470, 2476 n. 10, 61 L.Ed.2d 68 (1979). Thus the ultimate intent of Congress coincides with the foregoing statutory construction. *Cf. United States v. Riverside Bayview Homes,* —— U.S. ——, 106 S.Ct. 455, 464, 88 L.Ed.2d

419 (1985); *Bob Jones University v. United States,* 461 U.S. 574, 599–601, 103 S.Ct. 2017, 2032–33, 76 L.Ed.2d 157 (1983).

### 4. Post-BAFJA Case Law

Only two reported cases, both from Colorado, have considered the impact of BAFJA on *Madrid* and *Durrett.* The District Court in *Christian v. Ryan (In re Christian),* 48 B.R. 833 (D.Colo.1985) applied the language of section 101(48), as amended by BAFJA, to hold that a transfer occurs at the time of a foreclosure sale. The court found, under Colorado law, that the foreclosure sale only transferred a lien interest to the purchaser, which did not ripen into an ownership interest until after the redemption period expired. The court held that the change in rights arising from the foreclosure sale resulted in a transfer of an interest in the property. The *Christian* court is thus in agreement with this Court's analysis.

In *Lower Downtown Associates v. Brazosbanc Savings Association,* 52 B.R. 662, 665 (Bankr.D.Colo.1985), the court found it unnecessary to address the transfer issue, because it found that the sale price of 87.5% of the fair market value was reasonably equivalent value for the transfer.

### B. Reasonably Equivalent Value

Having determined that the foreclosure sale was a transfer under section 548, the Court must determine whether the debtor received reasonably equivalent value for the transfer. The debtor claims that the property was worth $115,000 when Dorman purchased it at the foreclosure sale for $51,250.

In overruling the Ninth Circuit's *Madrid* decision, Congress did not reinstate the Ninth Circuit Bankruptcy Appellate Panel's *Madrid* decision, which held that a regularly conducted and non-collusive foreclosure

---

7. The court declines to adopt some kind of reverse parol evidence rule, where oral statements are elevated above enacted language in determining the meaning of the statute. *Garcia v. United States,* 469 U.S. 70, ——, 105 S.Ct. 479, 484–85, 83 L.Ed.2d 472, 480 (1985).

8. In fact, there may be a "transfer", as defined in section 101(48), each time that a debtor's rights in property are substantially changed. *But see Fargo Biltmore v. Metropolitan (In re Fargo Biltmore),* 49 B.R. 782, 787–88 (Bankr. D.N.D.1985) (termination of post-sale right of redemption is not a transfer).

sale establishes the reasonably equivalent value of the property. Nevertheless, the Court finds persuasive the bankruptcy appellate panel's reasoning in *Madrid,* and followed in *White v. Luton (In re White),* 47 Bankr. 98, 101 (Bankr.S.D.Tex.1985).[9]

The Court holds that, where a third party purchases property at a non-collusive and regularly conducted foreclosure sale, the sale establishes the reasonably equivalent value required by Bankruptcy Code § 548. Such a rule is necessary to encourage prospective purchasers to bid up the price of property at foreclosure sales, and to maximize the amount realized at such sales for the benefit of interested parties, including debtors. Defendant Frank Dorman and others similarly situated provide a valuable service by making a market for the foreclosure sale of real property. It is in the best interest of all property owners that the market-making activity of such purchasers be encouraged by a rule that promotes the validity and finality of such purchases.

A contrary rule would put a cloud on the title of any property subject to a foreclosure sale. Such a cloud would extend for at least a year after the foreclosure sale. If the former owner files a bankruptcy petition within a year after the foreclosure sale, such a cloud would be extended by Bankruptcy Code § 546 to the earlier of two years after a trustee is appointed, or the closing or dismissal of the case. Such a cloud would seriously impair the marketability of foreclosed properties.

Thus, in the absence of procedural defects in the foreclosure sale process, such a foreclosure sale is not avoidable as a fraudulent conveyance.

■ This rule applies even where, as in this case, the amount paid by the purchaser does not cover all of the encumbrances upon the property. If the amount realized at the sale covers at least the indebtedness giving rise to the foreclosure, the Court will not permit the debtor to set the sale aside as a fraudulent conveyance.

■ In this case Dorman purchased the property here at issue for $743.45 more than the total amount owing on the first trust deed, which gave rise to the foreclosure sale. Thus the sale established the reasonably equivalent value of the property.

## IV. CONCLUSION

The Court concludes that a sale to a third party at a pre-petition foreclosure sale that is non-collusive and regularly conducted establishes the reasonably equivalent value of the property at issue. Thus it cannot be attacked as a fraudulent conveyance. Because the debtor makes no claim of procedural defects in the foreclosure sale process, the Court concludes that preservation of the automatic stay under Bankruptcy Code § 362(a) is not warranted in this adversary proceeding.

This opinion constitutes the Court's findings of fact and conclusions of law. Dorman is directed to submit an order in conformity with this opinion.

---

**9.** *See* also the dictum in *Winshall,* noted at Note 5, *supra.*