In re Herbert E. HAIDER, Debtor.

Bruce L. HUSSEY, Trustee, Plaintiff,

v.

May D. HAIDER, June O. Murray and Eugene E. Murray, Defendants.

Bankruptcy No. 89–30230–007.
Adv. No. 90/00048.

United States Bankruptcy Court,
D. Montana.

May 2, 1991.

Bruce L. Hussey, Law Offices of Bruce L. Hussey, Missoula, Mont., Trustee.

Edward A. Murphy, Datsopoulos, MacDonald & Lind, P.C., Missoula, Mont., for defendant May D. Haider.

Jon R. Binney, Milodragovich, Dale & Dye, P.C., Missoula, Mont., for defendants, Murray.

Herbert H. Haider, pro se.

* Editor's Note: Exhibits B, C and E–Q omitted by the court.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In these consolidated adversary proceedings, the Chapter 7 Trustee seeks to set aside a judicial foreclosure of real property located in Oregon in which the Debtor had a legal interest within one year of the filing of the bankruptcy petition. After Answer, the parties have submitted the matter to the Court on Stipulated Facts and Exhibits and have filed briefs in support of their respective positions.

The Stipulated Facts are:

1. Plaintiff, Bruce L. Hussey is the duly appointed interim trustee of the estate of Herbert H. Haider, Debtor.

2. Plaintiff's complaint in each of the adversary proceedings is to avoid the transfer by Sheriff Derrill D. Davidson, Deschutes County, Oregon of certain real property described in Exhibit "A" attached thereto.

3. That May D. Haider is the ex-wife of the debtor and has obtained a judgment against the debtor, which was entered June 30, 1983 and resulted in an order of foreclosure of the real property on August 11, 1988.

4. That a writ of execution directing the sale of the real property was issued.

5. That the real property was sold for the sum of Fifteen Thousand and 00/100 Dollars ($15,000.00) to May D. Haider subject to the right of redemption of various parties, including debtor, Herbert H. Haider, judgment creditor, Sandra Lee Gaines and Defendants, Eugene E. and June O. Murray as assignees of the judgment lien of Sahlstrom and Dugdale and Sandra Lee Gaines.

6. That the real property was redeemed on March 9, 1989 by Eugene E. and June O. Murray for the sum of Fifteen Thousand Two Hundred Thirty and 14/100 Dollars ($15,230.14).

7. That attached hereto as Exhibit "B" is a true and correct copy of the certificate of redemption.*

8. That on July 24, 1989 a Sheriff's deed was prepared and delivered to Eugene E. and June O. Murray transferring the real property described herein. Attached hereto as Exhibit "C" is a true and correct copy of the Sheriff's deed prepared and delivered to Eugene E. and June O. Murray.

9. That debtor filed for bankruptcy protection on February 27, 1989 and an order of relief was entered.

10. That at the time of the sale, the property was sold subject to a mortgage to United Savings Bank and to certain tax liens. The amount of the mortgage at the time of the sale in January 1989 was $13,700.00. A true and correct copy of the taxes owing on the date of the sale of the real property is attached hereto as Exhibit "E".

11. That subsequent to the sale of the real property, redemption of the real property and the Sheriff's deed to the Murrays, Defendant Haider and Defendant Murray have paid certain amounts relevant to the upkeep and retention of the property, including taxes and improvements. Attached hereto as Exhibit "F" is a true and correct copy of expenditures made by May D. Haider and/or Eugene E. and June O. Murray. Taxes are still owed against the property in the approximate amount of $11,500.00.

12. That between the dates of January 13, 1989 and July 24, 1989, neither debtor Herbert H. Haider nor any other party, including but not limited to Sandra Lee Gaines, redeemed said property. The parties entitled to redeem received notice of the sale. Sandra Gaines gave notice of intent to redeem (a true and correct copy is attached hereto as Exhibit "G"). The Murrays traveled to the Sheriff's Office of Deschutes County, Oregon and prepared a verified accounting. Creditor Gaines did not show up and did not redeem the property.

13. That attached hereto as Exhibit "H" is a true and correct copy of the amount and priority of liens, attached to said property as of January 13, 1989.

14. That at all times from January of 1989 through and including July of 1989,

the fair market value of said property was Three Hundred Thousand and 00/100 Dollars ($300,000.00) as irrigated land. The fair market value for the property, as dry land, was $200,000.00.

15. That attached hereto as Exhibit "I" is a copy of the notice of attorney's lien of Sahlstrom and Dugdale dated January 27, 1984 and the amended notice of attorney's lien of Sahlstrom and Dugdale dated August 22, 1984. That attached hereto as Exhibit "K" is a true and correct copy of the judgment of foreclosure of the Sahlstrom and Dugdale lien against debtor, Herbert H. Haider and attached hereto as Exhibit "L" is a true and correct copy of the amended judgment of foreclosure of Sahlstrom and Dugdale against Herbert H. Haider. Attached hereto as Exhibit "M" is a true and correct copy of the assignment of judgment from Sahlstrom and Dugdale to May D. Haider and Eugene H. and June O. Murray. Attached hereto as Exhibit "O" is a true and correct copy of a cashier's check tendered by Carl W. Hoppe, attorney for Murrays for redemption of the real property. Attached hereto as Exhibit "P" is a true and correct copy of the wire transfer from Eugene H. and June O. Murray from Carl W. Hoppe representing the amount of the redemption. Attached hereto is Exhibit "Q" as a true and correct copy of the judgment entered in favor of Sandra Lee Gaines against Herbert Haider.

16. That on or about October 9, 1984, Debtor Herbert H. Haider filed a Chapter 13 bankruptcy in the United States Bankruptcy Court for the District of Oregon, Case No. 384–03370, which Chapter 13 bankruptcy was dismissed by order of the Bankruptcy Court for the District of Oregon on October 7, 1986.

17. That Defendants, Murray and May Haider have been required to retain legal counsel to represent their interests in that property including lien interest and redemption rights and as a result, have incurred attorneys fees.

18. As of August 11, 1988, the date of

the foreclosure sale,[1] the irrigation system on the property was in a state of disrepair. Pipes and pumps were broken and ditches were dirty. Further, the property's right to receive water was in danger of being lost due to non-use. After the sale, the irrigation system was repaired and the water right saved. Further, the improvements and fences were in disrepair. It was necessary to clean and repair buildings, repair fences, and paint the house. All of this was done by May Haider or her successors.

To summarize, the above facts show May Haider had a judgment lien of over $147,-000.00 arising out of a divorce proceeding which was unsatisfied on August 11, 1988. In addition, United Savings Bank had a first lien on the property for $6,237.76. Taxes, penalty and interest were owed in excess of $11,000.00. Further the property was encumbered by a judgment lien of $11,775.00, which was subsequently assigned to Defendants Murray. Sandy Gaines held liens against the property exceeding $891,000.00.[2] Haider purchased the property at the Sheriff's sale for $15,-000.00 cash, which also satisfied her lien of $147,000.00, subject to the mortgage of $13,700.00, which the buyer assumed. However, pursuant to Oregon law, Murrays redeemed the property from sale on March 9, 1989, by payment of $15,230.14. The Sheriff then deeded the property to Murray on July 24, 1989. Sandy Gaines, as junior lienholder, filed a notice of intent to redeem, which she had the right to do under Oregon law, but failed to complete the redemption.

The Trustee seeks to set aside the judicial foreclosure sale under § 548(a)(2)(A) and (B) of the Bankruptcy Code.[3] To do so, the Trustee must show (1) the Debtor had an interest in the property transferred; (2) the Debtor was insolvent at the time of the transfer or was rendered insolvent as a result of the transfer; (3) the transfer occurred within one year of the bankruptcy petition; and (4) the transfer was for less than reasonably equivalent value. *In re Brown*, 104 B.R. 609, 611 (Bankr.S.D.N.Y. 1989). The Stipulated Facts show the Trustee has sustained his burden of proof on elements 1 and 3. The Stipulated Facts do not include any facts on insolvency, but the Court can infer that since the property is valued at $200,000 to $300,000 and had outstanding liens against the property in excess of $1 million that the Debtor was insolvent at the date of the Sheriff's sale. *In re Koubourlis*, 869 F.2d 1319 (9th Cir. 1989) (test of insolvency is whether the debts are greater than assets, at fair market valuation, exclusive of exempt property).

Where the Trustee fails is on element 4, that the property was sold for less than reasonably equivalent value. The liens against the property at the date of Sheriff's sale (January 12, 1989) and the petition date (February 27, 1989) were over $1 million. The value of the property did not exceed $300,000.00. Under Oregon law, upon sale, each junior lienholder enjoyed a separate right to redeem the property from the successful purchasers at the Sheriff's sale. *In re Petersen*, 42 B.R. 39, 40 (Bankr.Ore.1984). Only Murrays exercised that right of redemption. If the sale is set aside, all liens against the property are re-established. Under this circumstance, there is obviously no equity in the property for the benefit of unsecured creditors. This same situation was true at the date of sale. No equity existed in the property since the liens were far in excess of value. In short, no equity existed in the real property at the date of transfer. It is true May Haider's purchase at Sheriff's sale effectively extinguished all liens except the first

---

1. This statement of fact is incorrect. August 11, 1988, was the date of the foreclosure decree. The Sheriff's sale occurred January 12, 1989, in accordance with the decree entered August 11.

2. Of that sum, the Court in another proceeding found that the Judgment of $801,015.00 against the Debtor was non-dischargeable.

3. While Defendants Murray argue the Sheriff's deed was filed post-petition, the governing fact is the date of sale, which is pre-petition. Moreover, the Trustee's Complaint is filed under § 548 and does not raise any issue as to post-petition transfers which may be voided under § 549 of the Bankruptcy Code.

mortgage subject to the right of redemption. Under that situation, based on a value of $300,000.00, Haider's bid was about 62% of the appraisal value.

The law in the Ninth Circuit regarding the application of Bankruptcy Code section 548(a)(2)(A) to *nonjudicial* foreclosure sales is in apparent disarray as a result of conflicting decisions emerging from the Central and Southern Districts of California. The United States Bankruptcy Court, Southern District of California, in *Lindsay v. Beneficial Reinsurance Co. (In re Lindsay)*, 98 B.R. 983 (Bankr.S.D.Cal.1989), held that a foreclosure sale at which the real property sold for 64 percent of its fair market value could be set aside as a fraudulent conveyance where evidence showed that the foreclosing creditor failed to widely advertise the foreclosure sale or to take other commercially reasonable steps to ensure the best possible price. This decision clashes with the holding in *Kachanizadeh v. Denlinger (In re Kachanizadeh)*, 108 B.R. 734 (Bankr.C.D.Cal.1989), in which the United States Bankruptcy Court for the Central District of California held that the price paid at a regularly conducted, noncollusive foreclosure sale conclusively establishes the property's reasonably equivalent value and therefore could not be avoided as a fraudulent conveyance on the basis of low price. *Kachanizadeh,* supra, relied on *In re Madrid,* 21 B.R. 424 (9th Cir. BAP 1982), *rev'd on other grounds,* 725 F.2d 1197 (9th Cir.1984), and *In re Verna,* 58 B.R. 246 (Bankr.C.D.Cal.1986) to hold that *Madrid* is binding precedent under the doctrine of *stare decisis,* even though the court noted that *Lindsay* is the better reasoned approach. I concur with the *Lindsay* court, and the test set forth in that decision, namely:

"This Court concludes that the most balanced approach is one which will leave undisturbed the result of foreclosure sales that are procedurally proper, noncollusive and conducted in a commercially reasonable manner. To achieve that result, the court should conduct the following inquiry: first, the court should determine whether the foreclosure sale was properly conducted in accordance with state law and was non-collusive.

Second, the court should examine the totality of circumstances surrounding the sale to determine whether commercially reasonable steps were taken to achieve the best price at the foreclosure. If the Court is satisfied with the answer to the second inquiry, no further examination of the sale need be made. There is no question that situations may occur in which low percentage of fair market value is achieved even after employing sales efforts which are commercially reasonable for a forced sale. However, in those circumstances, this Court would leave the sales undisturbed. On the other hand, if the Court finds that the foreclosing creditor failed to take commercially reasonable steps to achieve the best forced sale price, the Court may then look to evidence of the effect of that failure on the price achieved. This third inquiry will necessarily require a consideration of evidence of the property's value, including its fair market value as determined by experts, or other evidence (such as resales).

In utilizing this three-part inquiry, the Court is not elevating compliance with state court foreclosure standards above all other factors. Neither is the Court looking solely to percentage of fair market value achieved. Rather, the Court will examine the price obtained at a foreclosure sale only when we are persuaded that the foreclosing creditor failed to take commercially reasonable efforts to achieve the best price." *Id.* at 991.

The Trustee fails in the case at bar because the evidence shows the foreclosure sale was conducted after notice, in accordance with Oregon law, by the Sheriff under Court Order and was therefore non-collusive. Indeed, the state district court entered its order confirming the January 12, 1989 sale, holding it was sold at public auction after notice given over 4 weeks by publication and mailing, and that the sale was "regular in all respects." Thus the sale was commercially reasonable in that steps were taken to achieve the best price possible by exposing the property to the

market over a sufficient period of time. Under *Lindsay,* this Court need go no further. Under these facts, the forced sale was made for reasonably equivalent value.

IT IS ORDERED Judgment shall be entered for the Defendants and against the Plaintiff dismissing the Complaint.